Stephenson, J.
 

 These cases involve substantially
 

 tbe same questions of law and were submitted together on exceptions of tbe prosecuting attorney of Lucas county, Ohio, to tbe ruling and judgment of tbe court
 
 *383
 
 of common pleas on demurrer to the indictment in cause No. 23485, and on motions to quash the indictments in eases Nos. 23483 and 23484.
 

 The constitutionality of Section 13446-4, General Code, is attacked in all the cases. This section reads as follows:
 

 “If the supreme court is of the opinion that the questions presented by such hill of exceptions should be decided, it shall allow the hill of exceptions to he filed and render a decision thereon; which decision shall not affect the judgment of the court of common pleas in said cause, nor shall said judgment of the court of common pleas he reversed, unless the judgment of the supreme court reverses the judgment of the court of common pleas on its ruling on a motion to quash, a plea in abatement, a demurrer, or a motion in arrest of judgment; in all
 
 other
 
 cases the decision of the supreme court shall determine the law to govern in a similar case.”
 

 This section as an entirety is plainly unconstitutional. It was the evident legislative intent to clothe the court with jurisdiction to declare the law that should govern in
 
 similar
 
 criminal cases in the future. Without the legal machinery provided for in this section, the state was powerless to review questions of law where the accused was discharged from custody upon one of the interlocutory pleas or in ease of acquittal. The law announced by the trial court, however erroneous and outrageous, in the absence of this statute, constituted the law of the case, for it was the last word of the last court under such circumstances. It is quite true that no court was obliged to follow such law, hut there was nothing to prevent courts of concurrent, or even appellate, jurisdiction from following it. Eegardless of the bitterness of the dose, the state had to take it.
 

 Take out of this section the attempted delegation of jurisdiction to reverse the trial court, and it hurts no
 
 *384
 
 one. No rights, constitutional or otherwise, are involved.
 

 Take the words “nor shall said judgment of the court of common pleas be reversed, unless the judgment of the supreme court reverses the judgment of the court of common pleas on its ruling on a motion to quash, a plea in abatement, a demurrer, or a motion in arrest of judgment,” and change the word “other” to “such,” and a perfectly good law remains.
 

 Counsel for the judge who rendered the decision insists that the Constitution of Ohio confers no jurisdiction upon this court to entertain proceedings of this character.
 

 This question has been passed on heretofore in the cases of
 
 State
 
 v.
 
 Cameron,
 
 89 Ohio St., 214, 106 N. E., 28, and
 
 State
 
 v.
 
 Kassay, ante,
 
 177, 184 N. E., 521. These cases are approved and followed.
 

 These indictments were drawn under and by virtue of the state banking laws. In case No. 23483, Clifford C. Whitmore, as president of the bank, was charged, under favor of Section 710-172, General Code, with abstraction and misapplication of funds. This indictment contained six counts. Counts Nos. 1, 3 and 5 are identical, except as to amounts. The 4th count is similar to the 3d, in that it charges abstraction instead of misapplication. Counts 2 and 6 likewise charge abstraction of funds.
 

 In case No. 23484, Clifford C. Whitmore, as president of the bank in question, was indicted under the same section for making false entries. This indictment originally contained fifteen counts. Counts Nos. 2, 3, 5, 6, 8, 9,11,12,14 and 15 were nolled by the prosecuting attorney, leaving Nos. 1, 4, 7,10 and 13.
 

 In case No. 23485, Leroy E. Eastman and others were indicted under Section 710-174, General Code. This section reads as follows:
 

 “Whoever, being an officer or employe of a bank, receives or, being an officer thereof, permits an em
 
 *385
 
 ploye to receive money, checks, drafts or other property as a deposit therein when he has knowledge that it is insolvent, shall be fined not more than five thousand dollars or imprisoned in the penitentiary not more than five years, or both.”
 

 Eastman is charged, as a director of the bank, with knowingly receiving money and permitting an employe to receive money, when he had knowledge that the bank in question was insolvent. It is insisted in this case that a “director” is not an “officer” under the statute; consequently, that he is not guilty.
 

 This indictment contains four counts. Counts Nos. 1 and 3 charged Eastman with receiving money as a director, and counts Nos. 2 and 4 charged him, as a director, with knowingly permitting an employe to receive money, knowing that the bank was insolvent.
 

 It will be remembered that each and every count in all of these indictments charged a felony. The principal complaint is to the effect that the indictments and each and every count are vague and indefinite, and do not state facts sufficient to constitute an offense under the laws of the state of Ohio.
 

 It having been held that this court has jurisdiction, the first question that asserts itself is whether or not the motions to quash, and the demurrer, considering the time and conditions under which they were filed, properly raise the questions sought to be raised.
 

 All of these indictments were returned at the September, 1931, term of the court of common pleas of Lucas county. The new Criminal Code of Ohio became finally effective July 21, 1929. It is insisted that the offenses charged in the indictments against Whitmore in cases Nos. 23483 and 23484 were committed prior to that time, and, as a matter of fact, they were. Counsel for the judge insists that the new Criminal Code can have no application to these offenses, and that to so hold would be to give the Criminal Code an
 
 ex post facto
 
 application.
 

 
 *386
 
 The offenses charged against Eastman were alleged to have been committed on or before January 16,1931, and no question along that line is in this case. None of these defendants were called upon to plead to the indictments until early in the year 1932.
 

 So that there may be no misunderstanding, we again affirm that this court has unquestionable jurisdiction, under the Constitution, to entertain these exceptions.
 

 The new Criminal Code, Section 13437-29, General Code (113 Ohio Laws, 123,169), authorizes the amendment of indictments by the prosecuting attorney; and it has been held by this court that the prosecuting attorney may go so far as to amend an indictment during the progress of the trial, provided the accused is not prejudiced thereby.
 
 Breinig
 
 v.
 
 State,
 
 124 Ohio St., 39, 176 N. E., 674.
 

 Section 13437-6, General Code, after making provision in a general way for the form of indictment or information, and. providing forms for certain specific offenses, concludes with the following provision:
 

 “Provided, that the prosecuting attorney, if seasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged.”
 

 If the accused feels that he is prejudiced because of the vagueness, indefiniteness or uncertainty of the indictment, he has a right to apply to the prosecuting attorney or to the court to have these defects remedied. It may be done by amending the indictment or furnishing counsel for the accused with a bill of particulars, setting up specifically the nature of the offense charged.
 

 This same procedure could be adopted in the event the indictment fails to state facts sufficient to constitute an offense under the laws of Ohio.
 

 The purpose of the new Criminal Code was to speed up criminal justice, without depriving an accused of any of his substantial rights. Our criminal statutes
 
 *387
 
 provided the order in which pleas to the indictment should he filed. Section 13439-5, General Code, under the head “Exceptions to an indictment,” provides:
 

 “The accused may except to an indictment by first, a motion to quash; second, a plea in abatement, and third, a demurrer.”
 

 It has been universally held by the courts of Ohio that the filing of a demurrer waives the plea in abatement and motion to quash; and the filing of a plea in abatement waives a motion to quash. There is no statutory provision made for a waiver of the demand of a bill of particulars. All that is necessary is that the bill of particulars be “seasonably demanded.”
 

 It is insisted that it never was the legislative intent to authorize the prosecuting attorney to provide the accused with a bill of particulars specifically describing the offense charged; that such, an authorization would permit the prosecutor to inject into the indictment allegations according to his whim or caprice, using the bill of particulars as a vehicle therefor.
 

 If this argument is good, then the Legislature certainly did not intend that the prosecutor should be authorized before, during or after the trial to amend the indictment, for by so doing he could likewise indulge his whims and caprices. But this court has held that the prosecuting attorney had a right to amend the indictment, so long as the accused was not prejudiced thereby; hence, we must hold that he has full power to furnish the accused with a bill of particulars, setting up specifically the nature of the offense charged. If the bill of particulars contains “whims and caprices” of the prosecutor, the accused may test it in connection with the indictment. Under such circumstances, the indictment and the bill of particulars constitute the charge against the accused. If, after the accused has been furnished with a bill of particulars, the charge remains vague, indefinite or uncertain, or fails to state facts sufficient to constitute an offense under the laws
 
 *388
 
 of the state, then the accused has a right to resort, in the order provided by statute, to the motion to quash, plea in abatement, and demurrer.
 

 The bill of particulars enactment was for the benefit of the accused, not the state. The accused has the right to be reasonably informed as to the nature of the offense charged against him, so that he may be able to make an intelligent defense. But he must take advantage of the instrumentalities the law has placed in his hands, else he cannot be heard to complain.
 

 If the accused sees fit to forego his demand for a bill of particulars, should he afterward be heard to insist that the indictment is vague, indefinite, uncertain, or does not state facts sufficient to constitute an offense under the laws of the state? We think not.
 

 It must have been the legislative intent, when provision for a bill of particulars was made, that the use of the motion to quash, plea in abatement, and demurrer, would be minimized. What other purpose can a bilí of particulars subserve?
 

 It is the holding of the court in each of these cases that the defendants, by failure to demand bills of particulars, waived their objections to the indictments because of vagueness, uncertainty, indefiniteness, or because they did not state facts sufficient to constitute an offense. Unless this order of criminal pleading was adhered to, the provision for a bill of particulars would be completely nullified.
 

 An accused person has no common-law rights in Ohio, as we have no common-law crimes; neither have we common-law criminal procedure.
 
 Key
 
 v.
 
 Vattier,
 
 1 Ohio, 132;
 
 Winn
 
 v.
 
 State,
 
 10 Ohio, 345;
 
 Allen
 
 v.
 
 State,
 
 10 Ohio St., 287;
 
 Smith
 
 v.
 
 State,
 
 12 Ohio St., 466, 80 Am. Dec., 355;
 
 Mitchell
 
 v.
 
 State,
 
 42 Ohio St., 383, and
 
 Johnson
 
 v.
 
 State,
 
 66 Ohio St., 59, 63 N. E., 607, 61 L. R. A., 277, 90 Am. St. Rep., 564.
 

 True, we have followed the common law in some of our statutory definitions of crimes and offenses, and
 
 *389
 
 we have adopted some of its criminal procedure. We have a right to, and do, recur to it for the light it may give in the construction of these statutes, but not for any right it affords to one accused of crime, for it affords none.
 

 Is the new Criminal Code of Ohio
 
 ex post facto
 
 as applied to the offenses herein, that were alleged to have been committed prior to its enactment? We think not; limiting the application, however, to the statutes herein involved.
 

 What right of these defendants was invaded by the enactment of the new Code? The provision for a bill of particulars is purely procedural. Defendants’ rights herein did not accrue until they were indicted, as they had not yet been brought into the controversy. Does it avail the defendants anything in advancing the argument that the right of the state to prosecute was in existence prior to the enactment of the new Criminal Code?
 

 Are the defendants insisting that they had a right to be prosecuted before they were?
 

 Statutes which relate to the remedy or mode of procedure, unless they deprive one of constitutional rights, are not unconstitutional. One charged with crime must submit to the existing rules of procedure when he is tried. He has no right to require the court to go back to procedure that obtained when the offense was committed. 6 Ruling Case Law, 294, Section 281, and cases cited.
 

 The statute changing the mode of procedure in criminal cases from indictment to information is not
 
 ex post facto
 
 as to the offense committed before its passage. It takes away ho substantial right. 6 Ruling Case Law 302, Section 289.
 

 Statutory changes in mode of trial or rules of evidence, which do not deprive the accused of a defense, and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited as
 
 ex
 
 
 *390
 

 post facto
 
 laws. A law providing a joint trial for persons jointly indicted for an offense committed before the statute was passed, while leaving discretionary power in the court to direct separate trials for good cause shown, is not invalid as an
 
 ex post facto
 
 law.
 
 Chatfield
 
 v.
 
 State of
 
 Ohio, 269 U. S., 167, 46 S. Ct., 68, 70 L. Ed., 216.
 

 Section 26 of the General Code of Ohio does not save the situation. The only phase of this statute that could be urged would be that the defendants had some existing right at the time the Criminal Code was enacted. We fail to discover any such right.
 

 We will give our first consideration to cause No. 23485, wherein Leroy E. Eastman is charged, as, a director of the bank, with violating Section 710-174, General Code.
 

 The law applicable to the other cases is likewise applicable to this one. A question of statutory construction is involved in this, case, and we feel it our duty to pass upon the question raised by the demurrer herein, brushing aside all question of waiver.
 

 The trial court held that a “director” was not an ‘ ‘ officer, ’ ’ under the banking laws of Ohio, and we may say this holding is not without merit. It is claimed that it was the legislative intent, in the banking act, not to include a director as an officer. It is further insisted that a director can act only in an official capacity in conjunction with the other members of his board, at a legal meeting.
 

 We approach the consideration of this question with the thought that banking laws
 
 should
 
 protect the public, whether they do or not. Penal laws do require a strict construction, but, if passed, should not be so construed as to destroy the obvious legislative intent.
 

 Are directors of a bank ‘ ‘ officers, ’ ’ within the meaning of Section 710-174,' General Code? The definitions of “officer” are as multitudinous as the sands of the sea.
 

 
 *391
 
 A director takes an oath that he will not knowingly violate or permit to be violated any of the provisions of the banking act. Section 710-66, General Code. Is it necessary to go further to determine the legislative intent? Why did the Legislature require this oath?
 

 If the Legislature desired to exempt directors under this section, why did it not repeal Section 710-66, General Code, which requires, as a part of the director’s qualifications, that he take an oath that he will not, in effect, violate Section 710-174, General Code? The director is thereby given notice that, although the specific word “director” has been eliminated from the statute in question, he is included within its provisions, under the generic term “officer.”
 

 The directors of a corporation, under the law, dictate the policies and workings of the corporate body, and they are charged to a certain extent with the knowledge of what is going on in the administrative affairs of their concern. They are trustees for the stockholders, and are charged with the
 
 utmost
 
 good faith in the discharge of their corporate duties.
 

 It is insisted that a director standing alone is powerless. He is powerless to bind the corporation, but as an individual he can have knowledge, and as between the corporation and its stockholders, or strangers, his knowledge is the knowledge of the board of directors, and having knowledge is the gist of the offense charged in the indictment herein.
 

 Every legislative act should have a reason behind it and a purpose in front of it. What reason could the Legislature have for placing directors, who, above all other officers, are charged with knowledge, beyond the pale of these criminal statutes, and at the same time leave the president, the vice president, secretary, treasurer, general manager, and all employes of the institution, within the pale? And what was its purpose?
 

 The dictates of government require us to ascribe to
 
 *392
 
 the Legislature a righteous intent. All laws are presumed to be of benefit to the state. Whether the law is good or bad is divined, in a measure, by its possible results. Surely the Legislature did not intend by this enactment to place it within the power of one or more directors of a state bank to wreck the institution, or knowingly permit it to be done, and then, when haled before the court on the charge of violating laws that were specifically enacted to conserve such institution and protect depositors, to cross their fingers and shout “King’s ex.,” and, upon being inquired of as to the King’s excuse, to answer, “I am a director. A director is not an officer. So saith the law of the commonwealth.” We do not believe that the Legislature anticipated a result of this character.
 

 Text-books, pronouncements of federal courts and the decisions of courts of last resort of other states assist little in the disposition of this question. This court declared itself on this proposition almost a half century ago, 1884, in the case of
 
 Scioto Valley Ry. Co.
 
 v.
 
 McCoy,
 
 42 Ohio St., 251. True, the
 
 McCoy case
 
 was a civil case. The law involved was “An act to secure pay to persons performing labor or furnishing materials in constructing railroads.” The law provided, in substance, that the laborer or materialman who had not been paid should serve a notice upon the
 
 secretary or other officer or agent of the railroad company.
 
 The notice was served on Hutchins, a director of the railroad company. The ease was carried to this court, and the ground relied on chiefly was the insufficiency of the notice and the question whether Hutchins, who was admittedly a director of the railroad company, was an officer, within the purview of the statute in question. The court held that Hutchins was an officer. This question was squarely before the court. The court, in passing on this case, said, at page 253:
 

 “We are at liberty to suppose * * * that a director of a railway corporation is one who is sufficiently
 
 *393
 
 interested in its affairs to see to it that any fact which comes to his notice, affecting his company, will, with promptness, be brought to the knowledge of the latter.”
 

 This case has at no time been cited in a reported case in Ohio, consequently it stands as the law in similar cases, and it is valuable, to a limited extent, for the light it may throw on other cases where the facts are different but the crux is the same.
 

 It would be a stupendous task to collate all the authorities bearing on this question. Suffice it to say, we regard the weight of authority, federal and state, as favoring the holding that a director is an officer of his corporation within the purview of the banking law. We are led to this conclusion because we cannot conceive it to have been the legislative intent, in the enactment of amended Section 710-174, General Code, to place it within the power of a director, or directors, to loot a state bank and go unpunished.
 

 The counts in the indictment in case No. 23483, wherein Clifford C. Whitmore, as president of the Securities Savings Bank & Trust Company, is charged with misapplication and abstraction of trust funds, are to some extent indefinite and uncertain in the respects pointed out by the learned trial judge.
 

 This is likewise true in case No. 23484, wherein Whitmore, as president of the bank and trust company, is charged with making false entries in a report to the superintendent of banks of the state of Ohio. It would have been a clearer charge had. the alleged entry been set out in substance in the indictment. The use of the words “whereby it was then and there made to appear” would have been thereby obviated. We are of opinion that when the indictment is taken by its four corners, the falsity of the alleged entry in the report is set forth with reasonable certainty. The gravamen of this offense is that the false entry was made
 
 with intent to deceive
 
 an agent appointed by the
 
 *394
 
 proper authority to examine the affairs of the bank. The
 
 intent to deceive
 
 is the specific intent.
 

 We are likewise of the opinion that the facts stated in this indictment are sufficient to bring the offense within the purview of Section 710-172, General Code. A high degree of certainty in stating an offense in an indictment never was required in Ohio. Certainty to a common intent has been the rule since 1853, as will be seen by reference to the fourth paragraph of the syllabus in the case of
 
 Stoughton and Hudson
 
 v.
 
 State,
 
 2 Ohio St., 562. “Certainty to a common intent” has been elaborated upon in the first paragraph of the syllabus in the case of
 
 Du Brul
 
 v.
 
 State,
 
 80 Ohio St., 52, 87 N. E., 837:
 

 “A criminal charge should be preferred with such certainty and precision as will reasonably apprise the party charged of that which he may expect to meet and be required to answer, and so that the court and jury may know what they are to try and the court may determine without unreasonable difficulty what evidence is admissible; also that the record to be made will be sufficiently definite to make it clear of what the party has been put in jeopardy.”
 

 Section 710-172, General Code, is not easily analyzed. Any and all vagueness, indefiniteness, uncertainty and insufficiency could have been taken care of by a bill of particulars. It was not requested. Why it was not requested does not appear from the record. By failing to seasonably demand a bill of particulars, all these defects were waived.
 

 The exceptions of the prosecuting attorney in each and all of the cases are sustained.
 

 Exceptions sustained.
 

 Ahden, J., concurs.
 

 Weygandt, C. J., Day, Jones and Matthias, JJ., dissent from proposition 1 of the syllabus, but concur in
 
 *395
 
 propositions 2 to 10, inclusive, of the syllabus and in sustaining the exceptions.
 

 Kinkade, J., not participating.