## TANALSKI v STATE

Ohio Appeals, 6th Dist, Lucas Co

Decided Nov 14, 1933

Cornell Schreiber, Toledo, and John W. Hackett, Toledo, for plaintiff in error.

Carl J. Christensen, Toledo, and Joseph W. Lane, Toledo, for defendant in error.

CROW, KLINGER and GUERNSEY, JJ, (3rd Dist) sitting.

## OPINION

By CROW, PJ.

The bill of exceptions which contains all the evidence in support of the indictments, and in opposition thereto, is very voluminous and no reason exists for specific allusion to any portion of the same, beyond such as is claimed to have been erroneously introduced, to the prejudice of defendant.

Much of the material evidence introduced by the State of Ohio, was not met by any evidence in behalf of defendant and it was conclusively established that defendant presented the claims embraced in the indictments, and that payment of the items was duly made to defendant out of the treasury of the county, the defendant using the name Acme Food Supply Co., in the various transactions.

It was further proved by witnesses of unquestioned credibility, who were well informed concerning the same, that the amounts charged for the numerous items comprising claims were very largely in excess of prevailing prices at which the items could have been obtained readily in Toledo, which evidence was also not countered by any proof offered in behalf of defendant.

The evidence of actual design by defendant to commit fraud and the other elements of conscious guilt, was given almost entirely by one Honberger who was a deputy sheriff, and the person in charge of buying supplies such as were the subject of the indictment. Indeed but for that evidence, the case could not have properly gone to the jury at all.

Honberger testified in substance that prior to the acts set forth in the indictment, he had become acquainted with defendant in connection with purchase of food supplies from one by whom defendant was employed, doing business as The Farm, and that defendant when about to engage in business for himself under the trade name we have mentioned, Acme Food Supply Co., Honberger and defendant arranged that defendant should share equally in the sale and delivery of the food supplies, with the former employer of defendant, on the same condition that had obtained as to The Farm, namely that as the food supplies were furnished their cost should be enhanced to such an extent as would include a very substantial amount of the aggregate of the items set forth in each bill, which excessive sum would, when defendant received the money from the county in payment of the bill, pay out of the same, to Honberger, that excess, which had been previously fixed by Honberger who when he received the excess money would turn it over to the then sheriff.

Honberger further testified that from the time defendant commenced selling supplies on his own account, defendant knew that his former employer was also furnishing supplies on condition like it had theretofore done as defendant was doing.

Honberger frankly admitted his guilt, in a very thorough cross examination which, however, apparently did not weaken his positive testimony in the particulars we have mentioned. No evidence impeaching Honberger's character in any particular was introduced.

Defendant testified that he had no such understanding with Honberger; that he never paid any money to him which had been realized from the sale of the supplies or obtained in any other way; in short, defendant's testimony directly disputed that of Honberger in all material respects.

Witnesses for defendant, some of them being members of his family, testified to many occasions when defendant would entertain Honberger at defendant's home, and that defendant and Honberger were on very intimate social terms, which testimony was in harmony with that of Honberger on the subject.

Portions of the evidence offered by the state tended to show that after Tanalski himself commenced to furnish the supplies, pursuant to the understanding he had reached with Honberger that defendant's former employer and defendant should each pad the bills for the supplies, the former employer had committed offenses similar to the ones charged in the three indictments against defendant, and that defendant by inquiries made to Honberger, kept himself informed relative to the amount of supplies purchased from his former employer.

The assignments of error argued in the brief in behalf of plaintiff in error and therefore the only ones this court will consider and determine, are four in number.

1. That the trial court erred in overruling a motion to quash, and a general demurrer to the several indictments.

Because of the extreme length of the indictments by reason of the enumeration of the various items, the prices at which they were billed and paid for, and the values and the prices at which they should have been billed and paid for, we will not set the same forth fully, but will note that

in addition to the portion we have hereinabove referred to, the claimed bill and evidence of indebtedness and items therein were false and fraudulent because of the difference between the actual values and the amounts obtained.

What more should, or could have been incorporated in the indictment has not been suggested by the brief for plaintiff in error, or in oral argument, and we are unable to conceive anything which would have in any way added to the proper and full charging of the offense. That the indictment measures up to the requirement of completeness under the laws of Ohio, we are thoroughly persuaded, and are content to cite only the decision of the Supreme Court of Ohio, in the recent cases of State v Whitmore, 126 Oh St 381, 185 NE 547.

2. Error in admitting the evidence we have referred to, of the unlawful acts of defendant's former employer, which as we have said, were part of the arrangement entered into between Honberger and defendant.

Those acts of Tanalski's former employer, the subject of the evidence complained of, were in furtherance of the scheme arranged by Honberger and defendant, and for that reason if no other, they would be unquestionably admissible; and they also were relevant to the issue of intent involved in the indictment.

We do not deem it necessary to cite authorities in support of this holding, because of its elementary nature.

Other evidence admitted over the objection of defendant, is complained of, in the particular of a failure to deliver certain of the items, that is, padding as to quantity; which failure was not alleged in the indictment. That testimony commencing at page 357 of the bill of exceptions, was given by Honberger and consisted of conversations claimed by the witness to have been had by him with defendant after the arrangement had been made between Honberger and defendant with reference to the fixing of the bills by defendant so as to include the amounts to be paid to Honberger for turning over by him later to the sheriff, which conversations pertained to raising the prices, that is padding the bills for the foodstuffs, doubling the prices in some cases and not doubling the quantity delivered.

It is a sufficient answer to the claim that prejudicial error was committed by the court in the admission of this testimony, to point out, which we do, that on page 315 of the bill of exceptions, the witness who gave this claimed erroneous testimony had

already testified that defendant in discussing the method to be followed in fixing the amounts of the false and fraudulent bills, had told defendant to raise the quantity of stuff supposed to be furnished, but not delivered, which defendant would do, during the period when The Farm and defendant were furnishing the supplies on the understanding of the division of the business pursuant to the arrangement under which defendant commenced furnishing the supplies. We quote from this page, the following questions and answers. "Q" indicating questions and "A" indicating answers, and the action of the court on the motion to strike out some of the answer.

"Q. And at the time of these conversations what if any suggestion did he (meaning defendant) make to you as to the method to be followed in fixing the amounts of the bills?

A. I would tell him and then he would raise the quantity of stuff that we were supposed to get and wouldn't get, that is the way he would make up his money then he would give me a rebate.

Q. What if anything was said—

By Mr. Schrider:—I move to strike out the latter part of the answer, if the court please.

By the Court: That may be stricken out."

The motion to strike out only ran to "the latter part" of the answer which obviously did not include the first portion of the answer alluding to the quantity which would be falsely stated in the bills. To have excluded that portion of the testimony which would have been but a repetition of that theretofore given by the same witness, could not have been of any advantage to defendant, inasmuch as it would neither have added to, or taken from, the former testimony which as we have said, went in without objection.

But another reason equally cogent if not more so, lies in the provisions of §13444-19 GC which in substance provides in part, that in any criminal case where defendant's intent or scheme, plan or system in doing an act is material, any like acts or other acts of defendant which may tend to show his motive or scheme, plan or system may be proved whether contemporaneous with or prior or subsequent to commission of the acts which the indictment on which trial is had charges, notwithstanding such proof may show or tend to show the commission of another or subsequent crime by defendant. Moreover, it may well be doubted whether in the indictments upon which

defendant is charged, it was at all necessary to have alleged padding as to quantities billed, which was but an act which might well have been the subject of a bill of particulars, had the same been demanded by defendant. However, we do not decide this point as it is unnecessary to do so.

It should be here noted that defendant, if Honberger was to be believed, and it must be conclusively presumed that the jury found so much of his testimony to be true, as tended to show intentional fraud by defendant in presenting, and collecting the money for, the padded bills, and also that defendant commenced supplying the foods to the county, under an agreement of a division of the busness with The Farm, on a substantially equal basis, with the knowledge of the then sheriff, and that The Farm kept step with the defendant and vice versa for a long period of time, thus stealing from the county with full knowledge on the part of both The Farm and defendant, which situation made the testimony in question, relative to the issues involved in the indictments on which the defendant was convicted, under the firmly established doctrine in Ohio and everywhere else, the evidence of acts and declarations in furtherance of the conspiracy which was part of the course to be pursued by defendant in making, and receiving payment of, the bills.

3. In the closing argument of the case by the prosecuting attorney he said in substance that the jury could not escape from the set of facts, which he enumerated, which should impel the jury to the duty of finding a verdict of guilty, the jury's duty would have been finished, "and the court can either let this fellow (defendant) go home or do anything he wants to with him." Defendant's counsel then objected to that latter statement, whereupon the prosecuting attorney answered "That is what the court can do," to which defendant's counsel noted an exception. Then the court said "The jury has nothing to do with the penalty."

When the nature of the evidence which was introduced tending to prove defendant's guilt, and the evidence in opposition thereto, is considered, it is impossible to see how the portion of the argument complained of, if erroneous, could have entered at all into producing the verdict which was returned. If the testimony of Honberger was true, on the facts essential to a conviction, which testimony stood almost alone so far as pertained to criminality on the part of defendant was concerned, and as we have said this court must conclusively

presume the jury to have found Honberger's testimony to be true to the extent it was necessary to sustain the verdict, no harm could have been done defendant by the words complained of. However, the court certainly made it clear to the jury that the latter could have no concern with the penalty, and the very eminent counsel for defendant must have regarded the admonition sufficient, for they said nothing following it, either by excepting to it, or requesting the court to go farther in an attempt to remove from the minds of the jury, the wrongful effect, if any there was, resulting from the language comprising the claimed misconduct.

4. Lastly, it is urged that the verdict is not sustained by sufficient evidence, being as it was, in relation to some essentials, founded almost if not wholly on the testimony of Honberger, an accomplice.

We need not repeat the generally accepted rule, which was well given by the learned trial judge in his charge, that one may be convicted of crime on the uncorroborated testimony of an accomplice, but that such testimony should be scrutinized with great care and that the safer rule is to not so convict.

It cannot be said in the case at bar that there was no evidence corroborating the testimony given by Honberger, one feature being the withdrawal by defendant, from his bank account sums identical with those testified to by Honberger, as representing the rebates.

Concisely stated, the question now in hand is, was enough evidence placed before the jury to justify the latter in finding the defendant guilty beyond a reasonable doubt?

We will not reiterate even the substance of the multitude of expressions of courts when analyzing the various considerations attending the weighing of evidence by a jury, and the duty of reviewing courts in that respect; but it is appropriate to the limits of this opinion, to note that where the doubt of the correctness of a verdict exists alone by reason of conflict of evidence, the verdict will not be set aside. 12 Oh St 146, syllabus 3.

In this case the only evidence in opposition to the testimony of Honberger, on the matters pertaining to the conspiracy entered into before defendant commenced supplying foodstuffs to the county, payments by defendant to Honberger for the sheriff, of the moneys resulting from the padding of the bills, and the conversations between defendant and Honberger during the time covered by the sales and deliveries by defendant, was the testimony of defendant

212

himself. That latter testimony must be conclusively presumed by this court, to have been not believed by the jury. Hence if defendant had not denied the testimony of Honberger in the particulars mentioned, would it be incumbent on this court to set aside the verdict as not being sustained by sufficient evidence? Assuredly not.

Given, as we have said, the testimony of Honberger which tended to show guilt of the falsity and fraud charged in the indictments, and the additional evidence which tended to establish the elements of guilt not testified to by Honberger, and remembering that under the rules, the weight to be given Honberger's testimony was a matter for the jury, there is no rule under which it becomes the duty of this court to set the verdict aside.

Repeating, all the elements essential to the crime charged in the several indictments were sustained by proof some of which was uncontrovertible by defendant, and much of which was the testimony of Honberger met alone by denial on the part of the defendant. In that situation and with the credibility of the testimony of both Honberger and defendant a question for the jury to determine, the verdict must stand.

It is well to remember that very many crimes involve elements which have to do with the joint efforts of two or more persons in the commission, or in the aiding or abetting of the commission, and therefore it is that no evidence is available to establish guilt, other than that of one or more of those who so jointly commit, or who aid or abet.

If for no other reason than that of necessity, guilt in such cases can properly be proven by the uncorroborated testimony of one or more, who may be guilty as the one on trial, though as already stated, trial courts almost invariably, in their discretion, caution the jury as did the trial judge in this case, concerning its duty in weighing and giving effect to the evidence of an accomplice.

The assignment of error that the verdict is not sustained by sufficient evidence, is therefore not well taken.

Upon the whole, the record here under review, in none of the particulars complained of in the briefs, shows error to the prejudice of plaintiff in error, which condition requires affirmance of the judgment.

KLINGER and GUERNSEY, JJ, concur.

Moore, Moore & Moore, Woodsfield, and F. W. Ketterer, Woodsfield, for plaintiffs in error.

Matz & Matz, Woodsfield, for defendant in error.

