Weygandt, C. J.
 

 The first question to be decided is whether it was erroneous for the Court of Appeals to overrule the motion of the defendant to dismiss the petition in error on the grounds that the state had no right or authority to prosecute such a proceeding in this case, and that the Court of Appeals was without jurisdiction to hear and determine the matter.
 

 This phase of the controversy is greatly simplified by reason of the fact that the defendant makes no claim of former jeopardy under Section 10 of Article I of the Constitution of Ohio. This makes it unneces
 
 *5
 
 sary to do more than advert to Section 6 of Article IV of the Constitution which provides that: ‘ ‘ The courts of appeals shall have * * * appellate jurisdiction * * * to review, affirm, modify or reverse the judgments of the courts of common pleas.” This language contains no intimation of a distinction between civil and criminal cases, and is so simple, unambiguous and comprehensive as to require no construction; and of course under the Constitutional Amendments of 1912 the established judicial powers of the Court of Appeals may in nowise be delimited by statute.
 
 Chandler & Taylor Co.
 
 v.
 
 Southern Pacific Co.,
 
 104 Ohio St., 188, 135 N. E., 620;
 
 Cincinnati Polyclinic
 
 v.
 
 Balch,
 
 92 Ohio St., 415, 111 N. E., 159. Therefore the ruling of the Court of Appeals in this respect was manifestly correct.
 

 The second question involves the contention of the defendant that Section 710-174, General Code, is violative of the due process clause of Article XIV of the Amendments to the federal Constitution in that it is vague, indefinite and uncertain especially because of the use of the term “insolvent” without providing a definition thereof. The defendant insists that this unfortunate statutory deficiency is fatal inasmuch as the case law of Ohio likewise fails to supply a satisfactory definition. This feature of the case is not discussed in the brief of the state.
 

 It is of course true that at least two distinct meanings have been accorded to this term. Generally it is used broadly to denote the insufficiency of the entire property and assets of an individual to pay his debts. It is also employed in a more restricted sense to express the inability of a person to pay his debts as they become due in the ordinary course of his business. 22 Ohio Jurisprudence, 113; 14 Euling Case Law, 628. Then in Volume 5 Ohio Jurisprudence at page 492, under the subject of banks the following statement appears:
 

 
 *6
 
 “As a matter of law, a banking company is considered solvent when it has on hand sufficient securities and funds to pay all its debts and liabilities; and it is considered insolvent when its debts and liabilities exceed all its assets.”
 

 This is sometimes called the “bankruptcy” rule. In Ballentine’s extremely useful law dictionary appears the following definition:
 

 “It may be used to denote the insufficiency of the entire property and assets of an individual to pay his debts, which is its general meaning and its meaning as used in the present National Bankruptcy Act.”
 

 Likewise in Webster’s New International Dictionary the first definition given is: “Not having sufficient estate to pay one’s debts.”
 

 A helpful discussion is found also in the annotation beginning on page 1160 of volume 81 A. L. R.
 

 It seems that on at least two occasions the Legislature of Ohio has attempted a definition of the word. In the Uniform Sales Act in Section 8456, subsection 3, General Code, appears the following restricted definition :
 

 “A person is insolvent within the meaning of this chapter who either has ceased to pay his debts in the ordinary course of business or can not pay his debts as they become due, whether he has committed an act of bankruptcy or not, and whether he is insolvent within the meaning of the federal bankruptcy law or not. ’ ’
 

 Then in Section 13108-1, General Code, in the penal code chapter on frauds the following broad definition is employed with reference to the receipt of money or other property by an insolvent broker:
 

 “A person shall be deemed insolvent within the meaning of this act whenever the aggregate of his property shall not, at a fair valuation, be sufficient in amount to pay his debts.”
 

 Although neither of these statutory definitions is in
 
 *7
 
 anywise related to Section 710-174, General Code, and is therefore not decisive of the instant question, nevertheless it is at least interesting to note that the only definition found in the penal code provides for the use of the term in its broader and less restricted sense.
 

 It seems that the only instance in which this court has spoken on the subject was in the early case of
 
 Mitchell
 
 v.
 
 Gazzam,
 
 12 Ohio, 315. This was a chancery action in which the complainants asked an accounting and other equitable relief with reference to an allegedly fraudulent assignment made in contemplation of insolvency. Although this was in pre-syllabus days, nevertheless there is a headnote to the case. However, this headnote or syllabus makes no reference to the following language appearing in the opinion on page 336:
 

 “Counsel have labored [to define] the meaning of the term insolvency. In the mercantile sense, it means a person unable to pay his debts according to the ordinary usages of trade. But in the broad sense used by the statute, it means a person whose affairs have become so deranged that he is unable to pay his debts as they fall due; and if, from such ai deranged state of his affairs, and the sense of inability to meet his moneyed engagements, he should transfer his property to a trustee to pay his debts, we should regard such assignment as made in contemplation of insolvency, and within the meaning of the statute.”
 

 In any event, until such time as the Legislature may indicate that in Section 710-174, General Code, this word is employed in other than its usual and broader meaning, this court is required to follow the settled rule that words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them. 37 Ohio Jurisprudence, 542. As was well said by Judge Price in his opinion in the case of
 
 Beverstock
 
 v.
 
 Board of Education,
 
 75 Ohio St., 144, on page 149, 78 N. E., 1007,
 
 *8
 
 a statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations, will not render it nugatory. It is the duty of courts to endeavor by every rule of construction to ascertain the meaning of, and give full force and effect to, every enactment of the General Assembly not obnoxious to constitutional prohibition.
 

 The lower courts wer? correct in their view that this statute is not vague, indefinite or uncertain and therefore void under the due process clause of Article XIV of the Amendments to the federal Constitution.
 

 The third and final question requiring discussion relates to the defendant’s contention that this entire matter is
 
 res judicata
 
 as distinguished from former jeopardy. This view was sustained by the trial court in overruling the demurrer of the state to the defendant’s plea in abatement, which the court treated as a plea in bar. However, the Court of Appeals held the principle of
 
 res judicata
 
 inapplicable.
 

 The basis of the plea in abatement (plea in bar) is the alleged and conceded fact that an indictment similar to the instant one had been returned against the defendant more than a year previously, and a demurrer to all four counts of this earlier indictment had been sustained on the ground that the facts stated were insufficient to constitute an offense under the laws of Ohio. In the plea in abatement in the instant case it is further averred that the trial court in the earlier case held Section 710-174 inapplicable to a director of a bank; that therefore judgment was rendered therein dismissing the proceeding and discharging the defendant; and that this earlier judgment remains unmodified and unreversed.
 

 It must be remembered that there are no common-law crimes in Ohio. 12 Ohio Jurisprudence, 48;
 
 Vanvalkenburg
 
 v.
 
 State,
 
 11 Ohio, 404;
 
 Mitchell
 
 v.
 
 State,
 
 42
 
 *9
 
 Ohio St., 383. It is likewise ordinarily true that the General Assembly has provided its own definitions and procedure with the result that criminal procedure in this state is regulated entirely by statute. 12 Ohio Jurisprudence, 49;
 
 Winn
 
 v.
 
 State,
 
 10 Ohio, 345;
 
 Municipal Court of Toledo
 
 v.
 
 State, ex rel. Platter,
 
 126 Ohio St., 103, 184 N. E., 1. Therefore the search for the answer to this question must be conducted accordingly.
 

 In preempting these fields of both substantive and procedural criminal law the General Assembly in Section 13440-2, General Code, has provided the following five pleas that may be entered to an indictment: 1. Guilty; 2. Not guilty; 3. A former judgment of conviction or acquittal of the offense; 4. Once in jeopardy; 5. Not guilty by reason of insanity. The only one here relied upon by the defendant is the latter part of the third. Was there a “judgment of acquittal of the offense” in this case? This requires a study of • Sections 13440-6 and 13440-7, General Code, which read as follows:
 

 “If the defendant was formerly acquitted on the ground of variance between the indictment or information and the proof, or if the indictment or information was dismissed upon an objection to its form or substance, or in order to hold the defendant for a higher offense, without a judgment of acquittal, it is not an acquittal of the same offense.
 

 “Whenever the defendant is acquitted on-the merits, he is acquitted of the same offense notwithstanding any defect in form or substance in the indictment or information, on which the trial was had. ’ ’
 

 The first of these sections provides that “it is not an acquittal of the same offense” “if the indictment
 
 * * *
 
 was dismissed upon an objection to its form or substance * * * without a judgment of acquittal. ’ ’ This is supplemented by the converse provision
 
 *10
 
 in the next section which makes it clear that the term “acquittal” means “on the merits” and after “trial * * * ' had.” The question is thus reduced to whether the defendant was acquitted on the merits and after trial had.
 

 The defendant contends that the trial court used the word “discharged” as synonymous with “acquittal,” that there was a determination “on the merits,” and that a “trial” was had. However, this court finds it is in disagreement with these contentions — especially the last one. According to the great weight of authority the word “trial” connotes something more than the determination of a preliminary matter; ordinarily it is considered as relating to the process by which the question of guilt or innocence is adjudicated. That this is the Ohio rule is indicated by Section 13442-8, G-eneral Code, which provides that the first step in a trial in a criminal case shall be the opening statement by counsel for the state. Other sections of the penal code employ the word in the same sense, and they are not thereby violative of the due process clause of Article XIV of the Amendments to the Constitution of the United States.
 

 It is contended further by the state that under the circumstances of this case the defendant is estopped to assert the defense of
 
 res judicata,
 
 and a number of authorities are cited in support thereof. However, the views already expressed make it unnecessary to further prolong this already extended discussion by a consideration of this question.
 

 But in conclusion there is another and peculiar phase of the history of this controversy that should be noted. As has been stated, the defendant in his plea in abatement averred that the judgment relating to the earlier indictment remains unmodified and unreversed. The correctness of this statement is difficult to determine because of the inevitable confusion re-
 
 *11
 
 suiting from the provisions of Sections 13446-2 and 13446-4, General Code, which purport to confer upon this court the power for a direct review of the decisions of the Court of Common Pleas without the usual preliminary intermediate step of a review by the Court of Appeals as provided by Sections 2 and 6 of Article IV of the Constitution of Ohio. In this instance the Prosecuting Attorney was apparently deceived into thinking that these statutes have abridged the power of the Court of Appeals to review the judgments of the Court of Common Pleas in criminal cases in which the element of former jeopardy is not involved. In any event he did not seek a review in the Court of Appeals but instead filed a bill of exceptions in, this court which then proceeded to go through the formality of disagreeing with the views of the Court of Common Pleas. This action was reported in 126 Ohio St., 381, in which but two members of this court concurred in the view that this statute is constitutional. Nevertheless under the peculiar provisions of Section 2 of Article IV of the Constitution there were insufficient concurrences to hold the statute unconstitutional. Then a majority of the court held that a director of a bank is an officer thereof.
 

 Was this a reversal of the Court of Common Pleas? These statutes provide that the decree of this court shall not affect the judgment of the Court of Common Pleas in
 
 said
 
 cause, but they also contain the further provision that the decree of this court
 
 shall
 
 determine the law to
 
 govern in
 
 a
 
 similar
 
 case. Just what sort of process is this? It has been said that this is not an exercise of judicial power. Of course it could not well be argued otherwise inasmuch as this power is concededly controlled by the Constitution alone, except in the case of revisory jurisdiction of the proceedings of administrative officers. But if the power involved in these statutes is not judicial, what is it? Legislative? Certainly not the latter, because all courts insistently
 
 *12
 
 deny any indulgence in judicial legislation. Then what becomes of the axiom that the exclusive sources of law are the legislative and judicial processes? To escape the horns of this dilemma it has been said further that these statutes are valid, not as conferring jurisdiction, but as prescribing a rule of
 
 procedure
 
 and
 
 practice.
 
 Manifestly this cannot possibly be other than a patently fallacious statement inasmuch as these statutes make no distinction whatsoever between substantive and procedural law; it is provided simply that the decision of this court shall determine the
 
 lam
 
 to govern in a similar case. Of course courts have inherent power to promulgate procedural rules, but it is equally well settled that such is not the case with reference to substantive law. Although the purpose of these statutes is a laudable one, it is apparent that they are in conflict with Sections 2 and 6 of Article IY of the Constitution of Ohio and therefore void. Paragraph three of the syllabus in the case of
 
 State
 
 v.
 
 Cameron,
 
 89 Ohio St., 214, 106 N. E., 28, paragraphs one and three of the syllabus in the case of
 
 State
 
 v.
 
 Kassay,
 
 126 Ohio St., 177, and paragraph one of the syllabus in the case of
 
 State
 
 v.
 
 McNary,
 
 126 Ohio St., 381, are overruled.
 

 The court adheres to the view that under the provisions of Section 710-174, General Code, a director of a bank is an officer thereof.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Stephenson, Matthias, Day and Zimmerman, JJ., concur.
 

 Williams, J., concurs in the judgment and in all paragraphs of the syllabus excepting* paragraph 12.
 

 Jones, J., concurs» in paragraphs 1, 2, 3, 5, 8, 9, 11 and 12 of the syllabus, but dissents from the judgment.