THE STATE OF OHIO, APPELLEE, *v.* CARSWELL, APPELLANT.

[Cite as *State v. Carswell,* 114 Ohio St.3d 210, 2007-Ohio-3723.]

(No. 2006–0151—Submitted December 12, 2006—Decided July 25, 2007.)

MOYER, C.J.

{¶ 1} In this appeal, we are asked to determine whether the domestic-violence statute codified at R.C. 2919.25 violates Section 11, Article XV of the Ohio Constitution.

{¶ 2} In November 2004, Ohio voters approved an amendment to the Ohio Constitution known as the Defense of Marriage Amendment or Issue 1. Voter approval of Issue 1 added Section 11, Article XV to the Ohio Constitution. Section 11 states: "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."

{¶ 3} Appellant, Michael Carswell, was indicted on one count of domestic violence in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The alleged victim was a female to whom Carswell was not married. The state intended to present evidence that Carswell's alleged victim had been

"living as a spouse" with Carswell and that she was therefore a "family or household member" under R.C. 2919.25(F).

{¶ 4} The trial court granted Carswell's motion to dismiss the indictment, concluding that the domestic-violence statute violated Section 11, Article XV of the Ohio Constitution, because the statute recognized a legal status similar to marriage for unmarried persons. The court of appeals reversed, holding that while the statute does create a special class of unmarried persons living together as a spouse, this classification did not create a legal status akin to marriage.

{¶ 5} We accepted Carswell's discretionary appeal.

{¶ 6} We begin our analysis with the established rule that statutes are presumed to be constitutional. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. Carswell argues that this presumption does not apply to the statute at issue in the case at bar, because R.C. 2919.25 was adopted prior to voter approval of Section 11, Article XV, and so, in drafting the statute, the General Assembly could not have tried to conform the statute to the constitution. That fact, however, does not remove the presumption of validity in this case, because the general rule as to the interpretation of constitutional amendments is that " '[t]he body enacting the amendment will be presumed to have had in mind existing constitutional or statutory provisions and their judicial construction, touching the subject dealt with.' " *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 303, 581 N.E.2d 1086 (Moyer, C.J., dissenting), quoting *State ex rel. Engle v. Indus. Comm.* (1944), 142 Ohio St. 425, 432, 27 O.O. 370, 52 N.E.2d 743. We proceed with the presumption, notwithstanding the absence of any empirical data to support it, that the drafters of the proposed constitutional amendment and the voters who approved it knew of the domestic-violence statute and that its purpose is the protection of persons from acts of domestic violence.

{¶ 7} The strong presumption of constitutionality is supported by another principle: "Before we can declare a statute unconstitutional, ' "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." ' " *Desenco*, 84 Ohio St.3d at 538, 706 N.E.2d 323, quoting *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 8} Issue 1 did not explicitly repeal R.C. 2919.25. Therefore, if we are to conclude that R.C. 2919.25 was repealed by Issue 1, we must conclude that it was repealed by implication, but we have held that such a finding is disfavored. This court has repeatedly held that repeals by implication are disfavored as a matter of judicial policy. *State ex rel. Kelley v. Clearcreek Local School Dist. Bd. of Edn.* (1990), 52 Ohio St.3d 93, 95, 556 N.E.2d 173 ("repeals by implication are

disfavored as a matter of judicial policy"); see, also, *State ex rel. Specht v. Painesville Twp. Local School Dist. Bd. of Edn.* (1980), 63 Ohio St.2d 146, 148, 17 O.O.3d 89, 407 N.E.2d 20.

{¶ 9} Addressing whether certain statutes were repealed by the constitution of 1851, we held, "The rule, that repeals by implication are not favored, is applicable to the inquiry whether any particular enactment has ceased to be in force on account of repugnancy to the new constitution. * * * The repugnancy which must cause the law to fall, must be necessary and obvious; if by any fair course of reasoning, the law and the constitution can be reconciled, the law must stand." *Cass v. Dillon* (1853), 2 Ohio St. 607, 608; for same holding with regard to the Constitution of 1912, see *State v. Cameron* (1914), 89 Ohio St. 214, 106 N.E. 28, paragraph two of the syllabus, overruled in part on other grounds by *Eastman v. State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E.2d 140, paragraph 12 of the syllabus. Thus, R.C. 2919.25 is unconstitutional only if it is clearly incompatible and irreconcilable with Section 11, Article XV.

{¶ 10} In determining whether a statute and a constitutional provision are clearly incompatible, we use the plain and ordinary meaning of the words in question and attempt to reconcile the words of the statute with the terms of the constitution whenever possible. *Zupancic,* 62 Ohio St.3d at 300, 581 N.E.2d 1086 ("A long-standing rule of construction mandates that we consider the common and ordinary meaning of the terms contained within our Constitution in order to interpret them properly"); *Desenco,* 84 Ohio St.3d at 538, 706 N.E.2d 323 ("Courts have a duty to liberally construe statutes in order to save them from constitutional infirmities").

{¶ 11} We consider first the terms of the constitutional provision. The first sentence of Section 11, Article XV, prohibits the state from recognizing as a marriage any union between persons other than one man and one woman. That constitutional prohibition is clear and is not at issue in this case. At issue is the second sentence of Section 11, Article XV, which bars the state from creating or recognizing a legal status for unmarried persons that "intends to approximate the design, qualities, significance or effect of marriage." This appeal requires this court to determine whether the indictment of Carswell for knowingly causing or attempting to cause physical harm to a "person living as a spouse" with him is vitiated because the statute under which he was indicted conflicts with the provision of Section 11, Article XV that prohibits the state from creating or recognizing a legal status for unmarried persons that approximates marriage.

{¶ 12} The term "legal status" is not defined in the amendment, nor is it defined in the case law of this court. A dictionary definition of the term "status" is succinctly stated as "[a] person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal

relations." Black's Law Dictionary (8th Ed.2004) 1447. Even more concisely, the term "status" is defined as "[t]he standing of a person before the law." Random House Dictionary of the English Language (2d Ed.1987) 1862.

{¶ 13} Under these definitions, being married is a status. Marriage gives individuals a standing before the law. Being married gives a person certain legal rights, duties, and liabilities. For example, a married person may not testify against his or her spouse in some situations. R.C. 2945.42. A married person may inherit property from a spouse who dies intestate. R.C. 2105.06. The definition of "status," our understanding of the legal responsibilities of marriage, and the rights and duties created by the status of being married, combined with the first sentence of the amendment's prohibition against recognizing any union that is between persons other than one man and one woman, cause us to conclude that the second sentence of the amendment means that the state cannot create or recognize a legal status for unmarried persons that bears all of the attributes of marriage—a marriage substitute.

{¶ 14} When we construe constitutional provisions, "the intent of the framers is controlling. If the meaning of a provision cannot be ascertained by its plain language, a court may look to the purpose of the provision to determine its meaning." *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14, citing *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph one of the syllabus.

{¶ 15} It is clear that the purpose of Issue 1 was to prevent the state, either through legislative, executive, or judicial action, from creating or recognizing a legal status deemed to be the equivalent of a marriage of a man and a woman. The first sentence of the amendment prohibits the recognition of marriage between persons other than one man and one woman. The second sentence of the amendment prohibits the state and its political subdivisions from circumventing the mandate of the first sentence by recognizing a legal status similar to marriage (for example, a civil union).[1]

---

1. {¶ a} "An issue of national interest arose, however, on November 18, 2003 when the Supreme [Judicial] Court of Massachusetts ruled that limiting the benefits, obligations, and protections of marriage to unions of opposite gender violated the requirements of the Massachusetts Constitution regarding equal protection of the law, see *Goodrich [Goodridge] v. Dept. of Public Health,* 440 Mass. 309, 798 N.E.2d 941 (2003). In response, the Ohio General Assembly amended Revised Code Section 3101.01, effective 5–07–04 in 2004 H 272. RC 3101.01(A) now specifies that 'A marriage may only be entered into by one man and one woman' (thereby expressly foreclosing polygamy as well as same-gender unions). While *Revised Code Section 3101.01(C)(1)* now provides that same-gender marriage is against the strong public policy of this State and is void ab initio, with no legal force or effect.

{¶ b} "In contemplation of the possible effect in Ohio of marriages between the same gender authorized by another State such as Massachusetts, the General Assembly by RC 3101.01(C)(2) took the approach that such marriages 'shall be considered and treated in all respects as having no legal

{¶ 16} We next consider whether the prohibitions in Section 11, Article XV, prohibit the state from prosecuting an alleged violation of R.C. 2919.25 when an element to be proved is that the accused is "living as a spouse" with the alleged victim. R.C.2919.25 states:

{¶ 17} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶ 18} "(B) No person shall recklessly cause serious physical harm to a family or household member.

{¶ 19} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

{¶ 20} "(D)(1) Whoever violates this section is guilty of domestic violence."

{¶ 21} R.C. 2919.25(F) defines the term "family or household member":

{¶ 22} "(1) 'Family or household member' means any of the following:

{¶ 23} "(a) Any of the following who is residing or has resided with the offender:

{¶ 24} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;

{¶ 25} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

{¶ 26} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

---

force or effect in this state and shall not be recognized by this state.' Finally, regarding benefits for government employees, RC 3101.01(C)(3) provides that recognition or extension by the State of statutory benefits of a legal marriage to non-marital relationships between persons of the same or different genders 'is against the strong public policy of this state.' In other words, the General Assembly expressed its intent that such benefits for marriage partners should not be conferred upon individuals cohabiting out of wedlock, whatever their gender. To further emphasize its intent in enacting the legislation, the General Assembly passed uncodified law stating that substitutes for marriage such as 'civil unions' shall not be recognized in Ohio.

{¶ c} "Some citizens expressed concern following these amendments that State or federal courts could rule that RC 3101.02 violates the equal protection guarantees of the Ohio Constitution, after the example of the Massachusetts court. To foreclose that possibility, the 2004 amendment to the Constitution was proposed by petition, for the purpose of writing into the fundamental law of the State the principles enacted in RC 3101.01. The amendment reiterates the statutory condition that marriage is a union between one man and one woman, and proceeds to mandate that the State and its political subdivisions shall not create or recognize any 'legal status' that 'intends to approximate * * * marriage' for unmarried individuals." Editor's Comment to Section 11, Article XV, in 2007 Pocket Part to Baldwin's Ohio Revised Code Annotated (2007).

{¶ 27} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

{¶ 28} "(2) 'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

{¶ 29} The statute distinguishes domestic violence from assault. The conduct of the accused is the same in both instances. Both crimes prohibit the act of "knowingly caus[ing] or attempt[ing] to cause physical harm," but the accused's relationship with the victim is the determining element. Physical harm caused to *another* is an assault, R.C. 2903.13; physical harm caused to a *family or household member* is domestic violence, R.C. 2919.25.

{¶ 30} " 'The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence * * *.' * * *

{¶ 31} "In contrast to 'stranger' violence, domestic violence arises out of the *relationship* between the perpetrator and the victim." (Emphasis sic.) *State v. Williams* (1997), 79 Ohio St.3d 459, 462, 683 N.E.2d 1126, quoting *Felton v. Felton* (1997), 79 Ohio St.3d 34, 37, 679 N.E.2d 672.

{¶ 32} The distinction between the two offenses is important because of the large class of potential victims created by R.C. 2919.25(F). The General Assembly clearly intended to offer protections to a wide class of persons. In addition to the contested classification of a "person living as a spouse," the statute recognizes at least 11 other classifications of specific victims: spouse, former spouse, a parent, a child, a blood relative (consanguinity), an in-law (affinity), the parent of a spouse or former spouse, the child of a spouse or former spouse, a blood relative or in-law of a spouse or former spouse, and the natural parent of a child who is also the issue of the offender. R.C. 2919.25(F)(1).

{¶ 33} R.C. 2919.25 does not create any special or additional rights, privileges, or benefits for family or household members. Any legal benefits that these persons might possess (such as a right to inherit property through intestacy) are derived from other statutory provisions, not from the person's status as a family or household member in the domestic-violence statute. Additionally, each subset of potential victims has different rights or duties in other statutory provisions. For example, spouses have many other rights and duties, while former spouses do not. By the plain language of the statute, R.C. 2919.25 creates a subset of victims, separate from the generic term "another" in the assault statute; it does not bestow additional rights, duties, or liabilities.

{¶ 34} The specific statutory category that Carswell argues violates the constitution is the "person living as a spouse" category. The statute says that "person living as a spouse" means "a person who is * * * cohabitating with the offender, or who * * * has cohabitated with the offender within five years" of the alleged crime.

{¶ 35} The statute does not define "cohabitation," but we have construed the term in this statute as follows: "The essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126, paragraph two of the syllabus. We further explained, "Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." Id. at 465, 683 N.E.2d 1126. The state does not create cohabitation; rather it is a person's determination to share some measure of life's responsibilities with another that creates cohabitation. The state does not have a role in creating cohabitation, but it does have a role in creating a marriage. See R.C. 3101.01 et seq. The state played no role in creating Carswell's relationship with the alleged victim. Carswell created that relationship.

{¶ 36} While the intent of the domestic-violence statute is to protect persons from violence by close family members or residents of the same household, the intent of the marriage amendment was to prevent the creation or recognition of a legal status that approximates marriage through judicial, legislative, or executive action. The statute and the constitution are not in conflict.

{¶ 37} We hold, therefore, that the term "person living as a spouse" as defined in R.C. 2919.25 merely identifies a particular class of persons for the purposes of the domestic-violence statutes. It does not create or recognize a legal relationship that approximates the designs, qualities, or significance of marriage as prohibited by Section 11, Article XV of the Ohio Constitution. Persons who satisfy the "living as a spouse" category are not provided any of the rights, benefits, or duties of marriage. A "person living as a spouse" is simply a classification with significance to only domestic-violence statutes. Thus, R.C. 2919.25 is not unconstitutional and does not create a quasi-marital relationship in violation of Section 11, Article XV of the Ohio Constitution.

Judgment affirmed.

FRENCH, LUNDBERG STRATTON, O'CONNOR AND O'DONNELL, JJ., concur.

PFEIFER, J., concurs in syllabus and judgment only.

LANZINGER, J., dissents.

JUDITH L. FRENCH, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

LANZINGER, J., dissenting.

{¶ 38} Because of an understandable need to uphold the domestic violence statute as it is currently written and to avoid the unintended consequences that result from the passage of Section 11, Article XV of the Ohio Constitution, the majority misinterprets the amendment, thus saving the statute from being declared unconstitutional. I respectfully dissent.

{¶ 39} The disputed portion of Section 11, Article XV is the second sentence, which says: "This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." I believe that this language implicitly repeals the domestic violence statute insofar as it applies to "person[s] living as * * * spouse[s]."

### Legal Status under the Domestic Violence Statute

{¶ 40} In discussing Section 11, Article XV's effect on the domestic violence statute and attempting to reconcile the two, the majority first considers the meaning of the term "legal status" as used in the amendment. As the majority points out, the term "status" can be defined expansively as " '[a] person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities and other legal relations'," majority opinion at ¶ 12, quoting Black's Law Dictionary (8th Ed.2004) 1447; or it can be defined more narrowly as " '[t]he standing of a person before the law,' " majority opinion at ¶ 12, quoting Random House Dictionary of the English Language (2d Ed.1987) 1862. The majority appears to accept the former definition. It states that "being married is a status * * * [because it] gives a person certain legal rights, duties, and liabilities," and then concludes that the second sentence of Section 11, Article XV, means that "the state cannot create or recognize a legal status for unmarried persons *that bears all of the attributes of marriage*—a marriage substitute." (Emphasis added.) Majority opinion at ¶ 13.

{¶ 41} Nevertheless, this is not what the disputed sentence says. The legal status prohibited is a legal status "that intends to approximate" *any one* of four attributes—"the design, qualities, significance *or* effect" of marriage. (Emphasis added.) The series is disjunctive, not conjunctive.

{¶ 42} Presumably, under the majority's reasoning, being unmarried does not give one a legal status. Yet unmarried persons living as spouses are covered by

the domestic violence statute; they do attain a legal status, albeit a limited one, for each has standing under law to prosecute the other person for an act of domestic violence. If individuals are unmarried and are roommates, for example, they do not have this statutory status. R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member," and "family or household member" includes "[a] spouse, a person living as· a spouse, or a former spouse of the offender." R.C. 2919.25(F)(1)(i). "Person living as a spouse" is defined in R.C. 2919.25(F)(2) as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

{¶ 43} As noted in Judge Karpinski's dissenting opinion in *State v. Douglas*, Cuyahoga App. Nos. 86567 and 86568, 2006-Ohio-2343, 2006 WL 1304860, ¶ 23, "[w]hen two unmarried people share financial responsibilities and engage in consortium with one another, what else have we done historically as a society other than to recognize that relationship as one that possesses the 'design, qualities, significance or effect of marriage.'"

{¶ 44} Including "person living as a spouse" within the definition of "family or household member" classifies persons who fall into that category as potential domestic violence victims, allowing them additional rights beyond those that would accrue if they were assault victims only. The domestic violence statute is linked to R.C. 2935.03(B)(1) (providing for immediate arrest of the accused) and R.C. 3113.31 (allowing a stronger protection order for the victim). The crime of domestic violence occurs within an intimate relationship and is distinct from the crime of assault.

{¶ 45} An assault, a first-degree misdemeanor, is committed when a person "knowingly cause[s] or attempt[s] to cause physical harm to another." R.C. 2903.13(A). An initial domestic violence offense is a first-degree misdemeanor but is elevated to a felony on a second offense, R.C. 2919.25(D)(3); an assault does not become a felony when the offender has a prior assault conviction.

{¶ 46} I believe that the General Assembly's classification of a "person living as a spouse" within the definition of "family or household member" recognizes a legal status for purposes of the domestic violence statute.

### Intent in Creating Legal Status for "Person Living as a Spouse"

{¶ 47} A classification that recognizes a legal status for an unmarried relationship does not in and of itself make the statute unconstitutional. The statute as applied to Carswell is unconstitutional only if the "legal status" of a domestic

violence victim who is "living as a spouse" intends "to approximate the design, qualities, significance or effect of marriage."

{¶ 48} Using the term "living as a spouse" within the definition of "family or household member" clearly expresses an intent to give an unmarried relationship a legal status that approximates the "effect of marriage." The constitutional problem in this case does not arise because cohabitating unmarried persons are included as one of the several groups to whom the domestic violence statutes apply. Instead, the problem is definitional: by using the term "living as a spouse" to identify persons whom the statutes protect and against whom prosecution may be instituted, the General Assembly inherently equates cohabitating unmarried persons with those who are married and extends the domestic violence statutes to persons because their relationship approximates the significance or effect of marriage.

{¶ 49} In this case, the statute is challenged solely as it applies to persons living as spouses. Carswell was indicted for knowingly causing or attempting to cause physical harm to a "person living as a spouse" with him. Because R.C. 2919.25 is a criminal statute, it must be strictly construed against the state. *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601. Even though I would strike this classification as unconstitutional, as did the trial court, Carswell would still face charges of assault.

{¶ 50} The majority recognizes that the purpose of the statute is to protect persons from acts of domestic violence but reasons that "R.C. 2919.25 does not create any special or additional rights, privileges, or benefits for family or household members." Majority opinion at ¶ 33. In saying that "[t]he state played no role in creating Carswell's relationship with the alleged victim. Carswell created that relationship," majority opinion at ¶ 35, the majority misses the point. The General Assembly's classification of "person living as a spouse" is a *recognition* by law of the relationship of unmarried and cohabiting individuals based solely on the similarity of that relationship to marriage. It is a status that enables a victim of assault the additional protection offered by the domestic violence statutes. Domestic violence is a crime quite different from a general assault, precisely because of the special intimacy of the parties.

{¶ 51} It appears that an unintended consequence of the second sentence of Section 11, Article XV, is that the state cannot include unmarried relationships within a statute's protection if in so classifying and defining their status it intends to approximate any one of four attributes of marriage (design, qualities, significance, or effect). In an attempt to reach a more palatable result, the majority concludes that "[w]hile the intent of the domestic-violence statute is to protect persons from violence by close family members or residents of the same household, the intent of the marriage amendment was to prevent the creation or

recognition of a legal status *that approximates marriage* through judicial, legislative, or executive action." (Emphasis added.) Majority opinion at ¶ 36. As attractive as this result is, I cannot agree that the constitution and statute do not conflict.

{¶ 52} The majority's decision rests on the supposed intent of Section 11, Article XV; but the voters who passed Section 11, Article XV, had only the language before them. The words in the second sentence of the amendment imply a repeal of the domestic violence statute as applied to a "person living as a spouse." There are other definitional classes in R.C. 2919.25, including persons related by blood or affinity. The General Assembly is not prevented from expanding the statutes to others, such as "all those living together in a domicile," for example, as long as those additions are not defined in a way that create or recognize a legal status "that intends to approximate the design, qualities, significance or effect of marriage" for unmarried relationships.

{¶ 53} I reach this conclusion reluctantly and regretfully. Nevertheless, I believe that we must interpret Section 11, Article XV according to its text, not as we speculate it may have been intended. Insofar as R.C. 2919.25 recognizes as a "family or household member" a person not married to the offender but "living as a spouse" with the offender, it is, in my view, unconstitutional beyond a reasonable doubt. See *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 54} I respectfully dissent and would reverse the court of appeals and reinstate the trial court's order amending the charge to one of assault.

---

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Joshua A. Engel and Lew Bechtol, Assistant Prosecuting Attorneys, for appellee.

Langdon & Hartman, L.L.C., David R. Langdon, and Joshua B. Bolinger, urging reversal for amicus curiae Citizens for Community Values.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika Cunliffe, Assistant Public Defender, and Charles B. Clovis, urging reversal for amici curiae Cuyahoga County Public Defender and Ohio Association of Criminal Defense Lawyers.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Gerhardstein, Branch & Laufman and Alphonse A. Gerhardstein; and Camilla B. Taylor, urging affirmance for amicus curiae Lambda Legal Defense and Education Fund, Inc.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Fernando R. Laguarda, Michael T. Hass, and Helen Gerostathos Guyton; and Bricker & Eckler, L.L.P., and Natalie Trishman Furniss, urging affirmance for amicus curiae National Network to End Domestic Violence et al.

Carrie L. Davis, urging affirmance for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc., and American Civil Liberties Union.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Matthew E. Meyer, Assistant Prosecuting Attorney, urging affirmance for amicus curiae, the Cuyahoga County Prosecutor's Office.

Michael R. Smalz; and Alexandria M. Ruden; and Lisa Eschleman, urging affirmance for amici curiae Action Ohio Coalition for Battered Women, Ohio Domestic Violence Network, and Ohio NOW Education and Legal Fund.