[Cite as *State v. Hoffmeyer*, 2026-Ohio-239.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

SAMUEL HOFFMEYER

    Appellant

C.A. No.    31360

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2023-11-3985

DECISION AND JOURNAL ENTRY

Dated: January 28, 2026

SUTTON, Judge.

{¶1} Defendant-Appellant Samuel Hoffmeyer appeals the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} This appeal arises from an incident between Mr. Hoffmeyer and L.R., his girlfriend with whom he shared an apartment, at the Dairy Queen in Montrose. Mr. Hoffmeyer drove backward through the drive-through and began yelling and cursing at a Dairy Queen employee for preparing the wrong ice-cream parfait. A manager, D.F., came to the window to assist, and Mr. Hoffmeyer attempted to throw the parfait at her. L.R. prevented Mr. Hoffmeyer from doing so by getting between him and D.F., and Mr. Hoffmeyer grabbed L.R. by the head and attempted to bash her face into the dashboard. L.R. broke free and jumped out of Mr. Hoffmeyer's truck. L.R.

ran back to the Dairy Queen for help, and D.F. had already called the police. Both L.R. and D.F. provided statements to the police regarding the incident.

{¶3} Mr. Hoffmeyer was charged with one count of domestic violence, in violation of R.C. 2919.25, a felony of the fourth degree with a prior domestic violence conviction. Mr. Hoffmeyer pleaded not guilty and a jury trial ensued. The jury found Mr. Hoffmeyer guilty of domestic violence and the trial court sentenced him to an 18-month term of imprisonment.

{¶4} Mr. Hoffmeyer now appeals raising three assignments of error for our review. We discuss Mr. Hoffmeyer's assignments of error out of order to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR II**

**[MR.] HOFFMEYER'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

{¶5} In his second assignment of error, Mr. Hoffmeyer argues his conviction for domestic violence, pursuant to R.C. 2919.25(A), is not supported by sufficient evidence because the State failed to prove Mr. Hoffmeyer and L.R. cohabited.

{¶6} R.C. 2919.25(A) states: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." In accordance with R.C. 2919.25(F):

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender[.]

. . .

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶7} In *State v. Shelby*, 2022-Ohio-4450, ¶ 5-6 (9th Dist.), this Court explained:

In *State v. Williams*, 79 Ohio St.3d 459 (1997), the Ohio Supreme Court wrote that "[t]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *Id*. at paragraph two of the syllabus. In *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, however, it clarified that the sharing of familial or financial responsibilities and consortium is required only if the victim and the offender do not share the same residence. *Id*. at ¶ 13.

"The burden of [production for] establishing cohabitation is not substantial." (Alteration sic.) *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 6, quoting *Dyke v. Price*, 2d Dist. Montgomery No. 18060, 2000 WL 1546555, *3 (Oct. 20, 2000). "[I]t is a person's determination to share some measure of life's responsibilities with another that creates cohabitation." *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, ¶ 35.

{¶8}    Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶9}    Here, L.R. testified, while waiting at a bus stop, Mr. Hoffmeyer stopped his car and asked L.R. if she wanted a ride because it was raining outside. L.R. went with Mr. Hoffmeyer and ended the night at a hotel where Mr. Hoffmeyer was staying. L.R. testified she and Mr. Hoffmeyer were "sexually intimate" that night at the hotel. L.R. testified after Mr. Hoffmeyer dropped her off at home, he texted and asked if she wanted him to come back and she said "[y]es." L.R. explained that Mr. Hoffmeyer had begun coming over and she would go to the hotel with him. In a few days, however, Mr. Hoffmeyer moved in with L.R. at her apartment.

{¶10} L.R. testified she recalls going to Mr. Hoffmeyer's storage unit, and "[h]e didn't really have a place to stay, so I let him stay with me." L.R. indicated that Mr. Hoffmeyer stayed with her every night and brought belongings from his storage locker such as a mattress, clothing, and kitchen items. L.R. also testified "every day we would bring a little bit more back to my house." L.R. stated she and Mr. Hoffmeyer were in a romantic relationship. Additionally, L.R. testified Mr. Hoffmeyer changed the locks on the front door, to which they shared a key, and established residency by receiving mail from Jobs and Family Services at her address. L.R. also testified Mr. Hoffmeyer introduced her to his mother as his "fiancée."

{¶11} Viewing this evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of domestic violence, including that L.R. and Mr. Hoffmeyer cohabited together as a spouse, proven beyond a reasonable doubt. The State provided sufficient evidence that, if believed, established every element of the domestic violence charge against Mr. Hoffmeyer.

{¶12} Accordingly, Mr. Hoffmeyer's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**[MR.] HOFFMEYER'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶13} In his third assignment of error, Mr. Hoffmeyer argues his conviction for domestic violence is against the manifest weight of the evidence. Specifically, Mr. Hoffmeyer argues a verdict resting on L.R. and Mr. Hoffmeyer being "household or family" members is against the manifest weight of the evidence.

{¶14} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier

of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387.

{¶15} "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). "[W]e are mindful that the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible." *Id.*, citing *State v. Crowe*, 2005-Ohio-4082, ¶ 22 (9th Dist.).

{¶16} Here, as indicated above, the jury heard L.R.'s testimony regarding cohabiting with Mr. Hoffmeyer prior to the assault. The jury heard L.R. testify that, prior to living with her at the apartment, Mr. Hoffmeyer was staying at a hotel and had a storage unit. The jury also heard L.R. testify that Mr. Hoffmeyer brought items from the storage unit such as a mattress, clothing, and kitchen utensils to her apartment for their use. The jury, however, also heard Mr. Hoffmeyer's counsel's cross-examination of L.R. regarding the length of her relationship with Mr. Hoffmeyer and whether someone living in subsidized housing can legally have someone who is not on the lease move in with them. Additionally, the jury heard the direct testimony and cross-examination of Officer Michael Greissing of the Copley Township Police Department. Officer Greissing, on both direct and cross-examination, testified regarding his investigation into whether L.R. and Mr. Hoffmeyer were cohabiting, and he admitted that he did not check Mr. Hoffmeyer's registered

address with Adult Parole Authority or the address associated with the registration of Mr. Hoffmeyer's vehicle to see if he was living at either of those addresses.

{¶17} As the trier of fact, the jury is tasked with the very difficult responsibility of resolving conflicting testimony and evidence presented at trial. However, the jury's resolution of these types of discrepancies in favor of the State does not, in and of itself, invalidate a guilty verdict. As stated above, this Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible. Based upon the record before us, this Court cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the domestic violence conviction against Mr. Hoffmeyer must be reversed and a new trial ordered.

{¶18} Accordingly, Mr. Hoffmeyer's third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**[MR.] HOFFMEYER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL.**

{¶19} In his first assignment of error, Mr. Hoffmeyer argues he was deprived of effective assistance of counsel because his trial counsel: (1) failed to present L.R.'s statements to police, on the day of the incident, that Mr. Hoffmeyer has been "staying" with her versus "technically living there[;]" and (2) failed to adduce evidence of Mr. Hoffmeyer's "registered" address with Adult Parole Authority.

{¶20} As a threshold issue, the State argues Mr. Hoffmeyer is attempting to introduce evidence of L.R.'s statements through a police body-camera video which was not made part of the record because the full video was not played during trial and the full video was not sent back to the jury. However, the full police body-camera video was made part of the record, as Exhibit 3A,

and this Court had the opportunity to review the police body-camera video in its entirety. As such, we will address Mr. Hoffmeyer's arguments on the merits.

{¶21} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, Mr. Hoffmeyer must establish both that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at paragraph three of the syllabus. If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 2008-Ohio-3108, ¶ 34 (9th Dist.).

**Police Body-Camera Video**

{¶22} Here, the full police body-camera video reveals an initial police interview with L.R., upon the police arriving on scene at the Dairy Queen, wherein she is extremely upset. Further, the video reveals ongoing conversations between the police and L.R. regarding the couples' living situation, relationship, strategies for locating Mr. Hoffmeyer, and retrieving L.R.'s purse, keys, and cellphone which she left in Mr. Hoffmeyer's truck when she jumped out of the vehicle, as well as discussions between the police officers about which charges to bring against Mr. Hoffmeyer. In the video, L.R. reveals she and Mr. Hoffmeyer are in a relationship and have been together two weeks. L.R. explains that Mr. Hoffmeyer has stayed with her, at her apartment, for a full week. L.R. indicates Mr. Hoffmeyer was living at a hotel before staying at her apartment, and that the only other place Mr. Hoffmeyer goes is a storage unit after she and Mr. Hoffmeyer

have a fight or disagreement about money. L.R. told police she and Mr. Hoffmeyer fight because he says she does not make enough money, cook enough food, or keep the apartment clean. L.R. also indicated that Mr. Hoffmeyer changed the locks on her apartment and she was supposed to get the key back, but he still had the key. Although L.R. made some contradictory statements regarding whether Mr. Hoffmeyer received mail at the apartment, and about the amount of clothing Mr. Hoffmeyer had at the apartment, the majority of L.R.'s statements to police supported that she and Mr. Hoffmeyer had been cohabiting, as spouses, in her apartment for at least one week prior to when Mr. Hoffmeyer assaulted L.R. in the Dairy Queen parking lot.

{¶23} When Mr. Hoffmeyer's counsel initially objected to the State only sending a portion of the police body-camera video to the jury as evidence, the State argued the full body-camera video contained inadmissible hearsay. The trial court agreed with the State's assessment of the video and Mr. Hoffmeyer's counsel withdrew his objection at that time. Further, the trial court and counsel for both parties discussed the fact that, even without the full-body camera video, Mr. Hoffmeyer's counsel cross-examined and impeached both L.R. and Officer Greissing regarding whether L.R. and Mr. Hoffmeyer cohabited as spouses for purposes of the domestic violence charge. In fact, Mr. Hoffmeyer's counsel used L.R.'s written statement to police to refresh her recollection about the duration of her relationship with Mr. Hoffmeyer. Further, Mr. Hoffmeyer's counsel cross-examined Officer Greissing on what counsel believed to be deficiencies in the police investigation regarding Mr. Hoffmeyer's address at the time of the assault.

{¶24} Indeed, as the Supreme Court of Ohio has previously stated, "[d]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Cepec*, 2016-Ohio-8076, ¶ 111, citing *State v. Leonard*, 2004-Ohio-6235, ¶ 146. Although Mr. Hoffmeyer's counsel did not use specific portions of the police body-camera video to impeach L.R. on cross-examination, he did

use other methods to cross-examine L.R. regarding the element of cohabiting, and impeach L.R., through the use of her written statement to police, regarding the duration of her relationship with Mr. Hoffmeyer. Thus, because counsel's performance did not fall below an objective standard of reasonable representation, Mr. Hoffmeyer has failed to meet his burden under the first prong of *Strickland*.

**Mr. Hoffmeyer's Registered Address**

{¶25} Mr. Hoffmeyer also argues his counsel's performance was deficient because counsel did not call Mr. Hoffmeyer's parole officer to testify at trial regarding Mr. Hoffmeyer's "registered" address with Adult Parole Authority. The record, however, reflects Mr. Hoffmeyer's counsel did, in fact, cross-examine Officer Greissing on his failure to investigate whether Mr. Hoffmeyer lived at the address that was registered with Adult Parole Authority. Additionally, Mr. Hoffmeyer's counsel elicited testimony from Officer Greissing on cross-examination that Officer Greissing also failed to check the address associated with Mr. Hoffmeyer's vehicle registration to confirm whether Mr. Hoffmeyer actually lived at that address instead of with L.R.

{¶26} "Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." *State v. Rafferty*, 2007-Ohio-3997, ¶ 16 (9th Dist.), quoting *Elyria v. Bozman*, 2002-Ohio-2644, ¶ 17 (9th Dist.). "Reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners." *Rafferty* at ¶ 16, quoting *State v. McCaleb*, 2004-Ohio-5940, ¶ 111 (11th Dist.). Further, as stated above, "[d]ebatable trial tactics do not establish ineffective assistance of counsel." Thus, because counsel's performance did not fall below an objective standard of reasonable representation, Mr. Hoffmeyer has failed to meet his burden under the first prong of *Strickland*.

{¶27} Accordingly, Mr. Hoffmeyer's first assignment of error is overruled.

III.

{¶28} Mr. Hoffmeyer's first, second, and third assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶29} I respectfully dissent in regard to the majority's resolution of the first assignment of error as I believe that trial counsel rendered ineffective assistance. The pivotal issue at trial was whether the State could demonstrate that Hoffmeyer was a family or household member pursuant to R.C. 2919.25(F)(1). I find it troubling that defense counsel failed to introduce L.R.'s statements to police that Hoffmeyer was staying with her but not "technically" living with her given that those statements would have been, by far, the most compelling evidence in support of Hoffmeyer's defense. Furthermore, defense counsel inexplicably failed to call Hoffmeyer's parole officer despite the fact that it was defense counsel who raised the issue that Hoffmeyer was on parole at trial. Calling the parole officer would have allowed Hoffmeyer to affirmatively demonstrate that his registered address with the Adult Parole Authority was not L.R.'s apartment. Given the posture of this case, I disagree with the majority's conclusion that defense counsel's failure to present the aforementioned evidence can be categorized as defensible trial tactics.

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.