STATE, EX REL. ROBERTS, RELATOR, *v.* MAXWELL, SUCCESSOR TO
BERYLE C. SACKS, WARDEN, THE OHIO PENITENTIARY, ET,
RESPONDENTS.

Ohio Appeals, Tenth District, Franklin County.

No. 6883.   Decided April 3, 1962.

*Mr. Theodore Roberts*, for himself.

*Mr. Mark McElroy*, attorney general, and *Mr. Aubrey A. Wendt*, assistant attorney general, for respondents.

BRYANT, J. This is an original action in habeas corpus brought by Theodore Roberts, an inmate of the Ohio Penitentiary, relator, against E. L. Maxwell, Warden of the Ohio Penitentiary, respondent. It is the claim of Roberts that he has served the maximum sentence imposed by the Common Pleas Court of Scioto County, Ohio, that he is therefore entitled to his freedom and to enforce this claimed right, he asks for a writ of habeas corpus.

The facts are somewhat involved in this case, some of them are admitted and others are disputed, making a brief reference to the facts and what has gone on before necessary.

Although three separate indictments were returned against Roberts for three offenses between April 22, 1953 and April 26, 1953, the principal controversy relates to but one of them.

For easier reference, we shall refer to them as the first, second and third indictments. As the nature of the charge in case of the third indictment is in dispute, we shall set forth as to each indictment, the case number in the trial court, the court term when voted by the grand jury, the name of the offense as certified to on the back thereof by both the prosecuting attorney and the foreman of the grand jury, the name of the offense as shown in large capital letters in the caption of the indictment, and the section number of the General Code, now Revised Code, which described and penalized the offense charged:

| Called Here | Com. Pls. Ct. No. | Term of Indict. | Crime As Certified by Grand Jury Foreman | Crime As Named In Indictment Caption | Gen'l Code Section Violated Per Caption | Offense Defined In Such Section |
|---|---|---|---|---|---|---|
| 1st Ind. | 16,616 | May '53 | Burglary & Larceny | Burglary & Larceny | G. C. 12,438 | Burglary |
| 2nd Ind. | 16,625 | May '53 | Burglary | Burglary | G. C. 12,438 | Burglary |
| 3rd Ind. | 16,700 | Sept. '53 | Burglary & Larceny | Burglary & Larceny | G. C. 12,438 | Burglary |

In the case of the first indictment, it was alleged that a warehouse building was broken into on April 24, 1953 and $60 in stamps were stolen; in the second indictment, it was alleged that a store building was broken into with intent to steal but nothing was alleged to have been stolen, while in the third indictment, it was alleged that a certain building (at the same address as that named in the first indictment) was broken into and miscellaneous property of a total value of $10 was taken. In the first and second indictments, the offenses were alleged to have taken place "in the night season," while in the third indictment, there is no such allegation but, on the contrary, it is alleged that the offense took place "in the day season."

Two sections of the criminal code are involved. As the Revised Code did not become effective until October 1, 1953, the

indictments refer to criminal code sections as numbered in the General Code. One of them is Section 12,438, General Code (Section 2907.10, Revised Code), defining and penalizing burglary of an uninhabited dwelling or other building *in the night season* and will hereinafter be referred to as the burglary section. The other is Section 12,442, General Code (Section 2907.15, Revised Code), penalizing breaking and entering a dwelling house or other building in the daytime, hereinafter referred to as the housebreaking section.

It appears that Roberts pleaded not guilty to the first and second indictments returned at the May 1953 term and later, when at the September 1953 term, the third indictment was returned, he also pleaded not guilty to it. It was on November 13, 1953, while the first and second indictments were still pending, that Roberts was tried by a jury on the third indictment, was found guilty and sentenced to an indeterminate term in the Ohio Penitentiary.

It is undisputed that four days later, on November 17, 1953, Roberts withdrew his former pleas of not guilty to the two burglary charges set forth in the first and second indictments, the charge in each of said indictments was reduced from burglary to house breaking, whereupon Roberts pleaded guilty to the two reduced charges of housebreaking and was sentenced to indeterminate terms in the Ohio Penitentiary of from one to five years each, the sentence under the first indictment to run concurrently with the sentence under the second indictment.

Sentences in criminal cases are pronounced orally by the court with the defendant present. It is the duty of the clerk of courts to make a record of the sentence which is pronounced. The indeterminate sentence for burglary in the night season of an uninhabited dwelling or other building (Section 12,438, supra, General Code) is from one to fifteen years, while the indeterminate sentence for housebreaking in the day season of a dwelling house or other building (Section 12,442, supra, General Code), is from one to five years.

In the return filed by the respondent in this case, reference is made to and there are attached photographic copies of the indictments, of certified copies of sentence and of journal entries made by the trial court in each of the three cases with the

appropriate certificates and, in the case of the third indictment, an additional entry filed on July 17, 1961 and labeled, "entry nunc pro tunc."

As heretofore indicated, it is admitted by all concerned that as to the first and second indictments, Roberts received indeterminate sentences of one to five years in the penitentiary on each charge, these two sentences to be served concurrently. The principal questions now before the court relate to what offense was charged in the third indictment, what offense Roberts was convicted of and sentenced to under this charge and what effect should be given to the 1961 "entry nunc pro tunc."

It is of course well-settled that there are no common law crimes in Ohio and that the General Assembly has preempted the fields of both substantive and procedural criminal law in Ohio. In the case of *Eastman* v. *State*, 131 Ohio St., 1 (1936), the court in the ninth branch of the syllbus held as follows:

"In the exercise of the legislative power vested in it by the Constitution of Ohio, the General Assembly has preempted the fields of both substantive and procedural criminal law in this state. (Paragraph one of the syllabus in the case of *Municipal Court of Toledo* v. *State, ex rel. Platter*, 126 Ohio St., 103, approved and followed.)"

At page eight of the *Eastman case, supra*, in the opinion by Weygandt, C. J., it is stated:

"It must be remembered that there are no common-law crimes in Ohio. 12 Ohio Jurisprudence, 48; *Vanvalkenburg* v. *State*, 11 Ohio, 404; *Mitchell* v. *State*, 42 Ohio St., 383. It is likewise ordinarily true that the General Assembly has provided its own definitions and procedure with the result that criminal procedure in this state is regulated entirely by statute. 12 Ohio Jurisprudence, 49; *Winn* v. *State*, 10 Ohio, 345; *Municipal Court of Toledo* v. *State, ex rel. Platter*, 126 Ohio St., 103, 184 N. E., 1. Therefore the search for the answer to this question must be conducted accordingly."

In our opinion, the third indictment was intended to charge the offense of burglary under the provisions of Section 12,438, supra, General Code, which is a breaking in the night season. We conclude that for the reason that the foreman, who signed the indictment, certified that the grand jury had voted an in-

dictment for burglary and larceny. The prosecuting attorney also signed his name to a similar certificate. The certificate of the grand jury foreman is indispensible to the validity of the indictment.

It is well-settled that the crime of burglary consists of an unlawful breaking in the night season. In the case of *Adams* v. *State*, 31 Ohio St., 462, 463 (1877), the Supreme Court of Ohio in a per curiam opinion said:

"An essential element in the crime of burglary is that the breaking and entering must be committed in the night season, and this element must be proved beyond a reasonable doubt, otherwise the accused should be acquitted."

The third indictment is therefore fatally defective in that it omits the allegation that the offense was committed in the night season, on the contrary, specifically alleging that the offense was committed "in the day season." It has also been held by the Supreme Court of Ohio that where a material element or ingredient of an offense is omitted from the indictment, such omission is fatal to the validity of the indictment and the judgment of conviction in such case is void for lack of jurisdiction "and may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding."

In the case of *State* v. *Cimpritz*, 158 Ohio St., 490 (1953), the phrase "maliciously and forcibly" was omitted from an indictment brought under Section 12,438, supra, General Code, and this defect was held to be fatal. The court in the third, fifth and sixth branches of the syllabus held as follows:

"3. If any material element or ingredient of an offense, as defined by statute, is omitted from an indictment, such omission is fatal to the validity of the indictment.

"5. To constitute an offense under Section 12438, General Code, a breaking and entering or an attempt to break and enter in the night season an uninhabited dwelling or other described building must be 'maliciously and forcibly' done, and an indictment purportedly drawn under such section, which charges merely that the accused in the night season 'did unlawfully attempt to break and enter' a building containing a food store, states no offense, is fatally defective and cannot be remedied by the court.

"6. A judgment of conviction based on an indictment which does not charge an offense is void for lack of jurisdiction of the subject matter and may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding."

We are not unmindful of the fact that in the oral argument of the case, in the briefs and to some extent in the return filed by the respondent, it was urged that the third indictment was in fact something else than what it purported to be namely, an indictment charging burglary and larceny in which there was a fatal defect.

We have heretofore made reference to the official certificate by the grand jury foreman that the third indictment charged "burglary and larceny" and that the caption to the indictment not only used the words "burglary and larceny" but also made specific reference to the burglary statute, Section 12,438, supra, General Code.

In addition thereto, the certified copy of the sentence which accompanied Roberts to the Ohio Penitentiary, in the caption thereof, described the third indictment as an "Indictment for Burglary & Larceny," and in the body of the certified copy of sentence stated that "The said Theodore Roberts having been found guilty of Burglary & Larceny, It is therefore the sentence, etc." We further note that in the journal entry of the court dated November 13, 1953, the following appears in the caption: "Charge of: Burglary & Larceny." Even in the disputed "entry nunc pro tunc" made by the trial court on July 17, 1961, the caption contains the words "Charge: Burglary and Larceny."

It is understandable therefore that when Roberts arrived at the penitentiary his record was made to show that he was under two sentences of from one to five years running concurrently and another sentence under the third indictment of one to fifteen years, to be served consecutively, making his combined term from two to twenty years.

.It would seem therefore regardless of the fatal defect in the third indictment that the trial court at the time of the trial, the jury in finding Roberts guilty, the trial court in entering the conviction and imposing sentence, the clerk of courts in

recording the sentence and the pardon and parole commission in Columbus, all treated the third indictment as having charged the offense of burglary and larceny with a one to fifteen year indeterminate sentence and not as charging the offense of housebreaking with a sentence of one to five years.

It would appear therefore that those officials just above referred to treated the third indictment as though it set forth a valid burglary charge. Roberts' argument in part is as follows:

"The essential facts of the instant case are, sometime ago, it was discovered by the applicant that he was committed to the Ohio Penitentiary for a Term of Two (2-20 yrs.) to Twenty Years. A term of 1-5 yrs and a Term of 1-15 yrs running Consecutively apart. After serving the 'minimum' of Two (2) years, he appeared before the Ohio Pardon & Parole Commission for consideration and benefit of Parole at which time his case was continued for a period of Five (5 yrs) years: Two years beyond the maximum penalty for the crime that he was sentenced under in the open Court of Scioto County. * * *"

It appears that as a result of the objection interposed by Roberts the records of the pardon and parole commission have been changed to indicate that his sentence under the third indictment is in fact one to five years for housebreaking rather than one to fifteen years for burglary.

Roberts also wrote a letter of protest to the trial court and Judge Vernon Smith of the Scioto County Common Pleas Court promised to investigate. The letter of Judge Smith was introduced into evidence at the time of the hearing and is as follows:

"My Dear Ted:

"Received your communication in regard to the addition of another charge against you and, frankly, this comes to me as a surprise.

"I am replying to your letter at this time since, as you suggest, there can be no sentence unless you be present and as you indicate you were not present to be sentenced on this subsequent charge, there must be some error in the record.

"I will proceed immediately to determine the exact status and give you the benefit of this investigation as soon as it is complete.

"I certainly am pleased to hear that you have changed your thinking and are living in the right way, and wish to extend any service of mine that you might require. If I can be of help to you in any way, please advise."

It is noted that the trial court in the letter just above quoted makes reference to the likelihood of "some error in the record." It is of course well-settled that trial courts have from the earliest times possessed and exercised inherent power to make entries of orders nunc pro tunc in proper cases, and it would seem that if in fact the record contained either an erroneous statement of what happened or there was an omission or failure to record that which did happen, that an entry nunc pro tunc is proper and fully authorized to correct such defects. See 39 Ohio Jurisprudence (2d), Trial, Section 40, p. 616; 37 Ohio Jurisprudence (2d), Motions & Orders, Section 18, Nunc Pro Tunc Entry, p. 680, and 31 Ohio Jurisprudence (2d), Judgments, Section 91, p. 570, and cases there cited.

Counsel for respondent has submitted with the return of the respondent a photographic copy of the order made by Judge Smith on July 17, 1961, one month following the date of the letter Judge Smith wrote to Roberts, above set forth. This entry in full is as follows:

"In the Court of Common Pleas Scioto County, Ohio

"State of Ohio      :
                        No. 16700 *Entry Nunc Pro Tunc*

      vs.             :
                        Charge: Burglary and Larceny

"Theodore Roberts:

"It appearing to the Court that on a former day herein, to-wit: November 13, 1953, it was the sentence and judgment of this Court that the defendant be confined in the Ohio State Penitentiary, Columbus, Ohio, until legally discharged by law.

"The Court now directs that the same is to run concurrent with the sentence heretofore imposed in case No. 16625 and case No. 16616.

"Enter
"Vernon Smith
_____
"Vernon Smith, Judge"

While counsel for respondent admits without qualification that Judge Smith on July 17, 1961, in the case of Roberts possessed full authority to order the sentence under the third indictment to run concurrently with the sentences under the first and second indictments, nevertheless there appears the following in the return filed on behalf of the respondent on February 9, 1962:

"* * * On July 17, 1961, the sentencing judge attempted to modify his former entry in Case No. 16,700 by making what is designated as a nunc pro tunc order wherein it is directed that the sentence in Case No. 16,700 should run concurrently with the sentences imposed in Case Nos. 16,625 and 16,616. Copies of the foregoing sentences, certificates of such sentences and a copy of the directive of July 17, 1961, are attached hereto and made parts of this return."

It apparently is his position that the word "now" appearing as the third word in the second paragraph of the nunc pro tunc order in some manner renders that order invalid. With that conclusion we find ourselves in disagreement. In our opinion, Judge Smith had full power to make a nunc pro tunc order in this case on July 17, 1961, the purpose of which was to make the record speak the truth by supplying an order which, while actually made in 1953, was not entered upon the record by the clerk.

The sentence in case of the third indictment was pronounced on November 13, 1953, at which time the other two indictments were pending and undisposed of. It is perfectly obvious that on November 13, 1953, the court was powerless to make that sentence run concurrent with the others because there were no other sentences at that time. On November 17, 1953, however, when the sentences were imposed in the other two cases, or for that matter at any time during the September 1953 term, the trial court had full power to enter the additional order making the sentence under the third indictment run concurrently with the other two.

Obviously a nunc pro tunc entry is never made until such time as the error or omission making it necessary is brought to the attention of the court and the court decides to act. In such a case, the court's order is made now as of the earlier

date which is the meaning of the title given to it namely, "Nunc Pro Tunc." If the view urged by counsel for the respondent be adopted, the order of the trial judge is rendered a nullity and will have no effect of any kind or character. We do not think such a construction or interpretation is warranted or proper.

In passing, it may be well to recall that the nunc pro tunc order complained of was filed in a court proceeding and could have been appealed by the state if such action were taken during the proper statutory period. No such appeal having been taken, it would seem that no collateral attack is warranted, this being the order of a court of general jurisdiction which is surrounded by presumptions of regularity.

In as much as the respondent has reduced the sentence under the third indictment to a maximum of five years and in view of the nunc pro tunc order of the court making that sentence run concurrently with the other two sentences, it would appear that when Roberts has served an aggregate of five years, he is entitled to his release and thus whether we consider the third indictment totally void or interpret it as a valid charge of housebreaking for which the imprisonment is to be served concurrently with the other sentences, the result is the same and Roberts at the end of five years imprisonment becomes unconditionally entitled to his release.

As it appears to be admitted that Roberts has served considerably more than five years imprisonment, his petition for writ of habeas corpus is well taken and the appropriate order for his immediate release should be issued.

DUFFEY, P. J., concurs.
DUFFY, J., dissents.

DUFFEY, P. J., concurring. In my opinion, indictment No. 16700 sufficiently and validly charges the crime of breaking and entering in the day season. Section 12,442, General Code. (Section 2907.15, Revised Code.) The return of writ contains an admission by the State that the petitioner was sentenced "on a charge of burglary and larceny in the day season." The sentence attached to the return is a photostat of a certified copy of sentence which states defendant was found guilty of

"Burglary & Larceny." Under Section 2949.12, Revised Code (Section 13455-1, General Code), a sentence shall "clearly describe the offense and designate the sections of the Revised Code under which conviction was had . . . ." That statute also requires that the warden be furnished a copy of the indictment. These statutory requirements are designed to enable the penal institution to accurately determine the proper period of confinement. Under this state of the record, I believe this court can and should accept the State's admission in the return of writ. Accordingly, petitioner is subject to a term of one to five years under Case No. 16700.

The State has relied on only one point—that the nunc pro tunc entry is void and, therefore, petitioner is serving a term of two-to-ten years, which has not expired. I agree with Judge Bryant that the Scioto County Common Pleas Court *could* legally on November 17, 1953, and for some time thereafter, issue an order modifying the sentence of November 13, 1953, to make it concurrent with the later imposed sentences in case Nos. 16616 and 16625. The entry in question here is, on its wording, consistent with that possibility. However remote and theoretical that possibility may be, it is a possibility, and there is no evidence before us which excludes that possiblity.

The State is here making a collateral attack upon an order of a court of general jurisdiction. There is a presumption of jurisdiction. 14 Ohio Jurisprudence (2d), Courts, Sections 131 and 132. While the limits on the power to make a nunc pro tunc entry should be scrupulously observed, I cannot uphold a *collateral* attack on the ground that there is a probability of abuse.

Accordingly, petitioner is entitled to release, not because of an invalid indictment, but rather on the ground that the nunc pro tunc entry on this record must be taken as valid and petitioner has, therefore, *completed* his sentence.

DUFFY, J., dissenting. As the petitioner has not shown that he is unlawfully restrained of his liberty, I do not believe the writ of habeas corpus should be granted. He complains of a "defective mittimus" and "invalid sentence," which are not grounds for the granting of a writ of habeas corpus.

The indictment in case No. 16700 did charge that the peti-

tioner "unlawfully, maliciously and forcibly broke and entered a certain building, to-wit: a storeroom located at 1931 Gallia Street, Portsmouth, Ohio of one Henry Meyer Company in the day season, with intent to commit Larceny therein," and the petitioner alleged that the jury did find him guilty of "the crime of breaking and entering in the day season with intent to commit a felony." If so, it is apparent that the conviction was consistent with the indictment even though the certified copy of the Sentence appears to be erroneous.

It does not appear that the court which rendered the order lacked jurisdiction over the person of the petitioner or of the subject matter, and an error in the sentencing procedure does not entitle one to a writ of habeas corpus. Section 2725.05, Revised Code. See also *Evans* v. *Sacks, Warden*, 173 Ohio St., 116.

As to the entry of the trial judge labeled "Nunc Pro Tunc," the entry itself recites what was done on November 13, 1953, and then contains these words "The Court *now* directs that the same is to run concurrent with the sentence heretofore imposed in case No. 16625 and case No. 16616." (Emphasis added.) This is not a "Nunc Pro Tunc" entry.

The facts show that the sentences in cases No. 16616 and No. 16625 were entered after November 13, 1953, and were not "heretofore imposed," and it appears that the judge is attempting to change the sentence some eight years later. This he has no authority to do, and such action on the part of the trial judge should not be the basis for an allowance of a writ of habeas corpus.

It should also be noted that evidence presented indicated that the state's penal records had been corrected so as to show that the sentence under case No. 16700 was for a term of one-to-five years, and there is indication that one of the sentences has been served and it would seem that petitioner is now serving the sentences rendered in cases No. 16616 and No. 16625. If the trial judge had intended concurrent sentences, and had orally told the petitioner that in 1953, and a clerical mistake was made, a proper nunc pro tunc entry in those cases should entitle the petitioner to his freedom.