[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *729 W. 130th St., L.L.C. v. Hinckley Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2026-Ohio-595.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-595

729 WEST 130TH STREET, L.L.C., ET AL. *v.* HINCKLEY TOWNSHIP BOARD OF ZONING APPEALS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *729 W. 130th St., L.L.C. v. Hinckley Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2026-Ohio-595.]

*Zoning—Appeals—Powers of township zoning boards under R.C. 519.15—An email sent to one of a property's owners was not a "decision" that triggered deadlines for owner to pursue his rights in his property's use—Board of Zoning Appeals lacked jurisdiction to entertain appeal—Court of appeals' judgment affirmed.*

(No. 2024-1419—Submitted September 16, 2025—Decided February 25, 2026.)

APPEAL from the Court of Appeals for Medina County,

No. 2023CA0020-M, 2024-Ohio-3349.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**FISCHER, J.**

{¶ 1} We accepted this discretionary appeal filed by appellant, Hinckley Township Board of Zoning Appeals ("BZA"), to determine whether Thomas Wilson, the township's zoning inspector, issued a "decision" under R.C. 519.15 regarding the zoning status of property on which sits a closed tavern. The owners are appellees, 729 West 130th Street, L.L.C., and Brent A. Rumes (collectively, "the property owners"). We conclude that Wilson did not issue either an appealable or an enforceable decision. We therefore affirm the Ninth District Court of Appeal's judgment.

## I. BACKGROUND

*A. The property owners sought clarification about the property's zoning status as a nonconforming use under the zoning resolution*

{¶ 2} Until April 2019, the property owners operated a tavern, the Adult Day Care Center, located at 729 West 130th Street, Hinckley, Ohio ("the property"). While zoned "R 2 residential" under the Hinckley Township Zoning Resolution ("HTZR"), the property was operated as a tavern under the nonconforming-use provisions of HTZR Section 8.3. HTZR Section 8.3(D) authorizes properties with uses that predate the enactment of the zoning resolution to legally continue their nonconforming use so long as no "voluntary discontinuance" of that use has occurred for two years or more. The tavern's liquor license became inactive in January 2019, and the tavern ceased operations in April 2019.

{¶ 3} After being consulted by a potential buyer interested in reviving the property's use as a tavern, on March 4, 2022, Rumes and Thomas Syms, who is a member of 729 West 130th Street, L.L.C., visited Wilson's office to inquire about the property's zoning status as a nonconforming use. The zoning resolution encourages such informal questioning:

2

> The Township Board of Trustees, Township Zoning Inspector, and Township Zoning Commission are at your disposal to answer any questions you may have. These Township officials are readily available and most anxious to serve you to make certain your plans coincide with the Zoning Regulations as well as fit into the Hinckley Township Comprehensive Plan. Please contact these officials before taking any action that may be affected by zoning.

HTZR, Preface.

{¶ 4} On March 15, Wilson followed up with Rumes by email, copying an Ohio Department of Commerce liquor-control compliance agent and several Hinckley Township officials and employees. In the email, Wilson explained that the State had notified Hinckley Township that the tavern's liquor license was not in force as of January 11, 2019, and concluded, "Based upon the Hinckley Zoning Resolution the building and land located at 729 W. 130th no longer qualifies as a non-conforming use." Wilson quoted HTZR Section 8.3(D), which states, "Voluntary discontinuance of the non-conforming us of a building . . . for a continuous period of two (2) years or longer shall constitute voluntary abandonment." He then listed the permitted uses in R-2 residential districts. Wilson electronically signed the email and included his title, his contact information, and the zoning office's hours.

{¶ 5} That same day, Wilson, spoke to Rumes by phone about the email. After speaking with Rumes, Wilson emailed the Medina County prosecuting attorney's office, which acts as legal counsel for the zoning inspector, and informed it that Rumes intended to seek legal counsel.

{¶ 6} The property owners' attorney emailed Wilson on April 6 to inquire about the zoning status of the property. The property owners' attorney

acknowledged Wilson's email to Rumes that informed him that their "property may no longer be used in the manner in which it [had] historically been used because it [did] not currently have an active liquor license and/or was temporarily closed during the pandemic," but the property owners' attorney claimed that the property owners had not received "written notice of the Township's findings or an explanation regarding the Township's position." Nor, he wrote, had they received "notice of any issued violations." The attorney requested "any written notices or communications to the Owners regarding the Township's position, findings and/or determinations."

{¶ 7} Brian Richter, a Medina County assistant prosecuting attorney, responded to the property owners' attorney's April 6 email on April 12, asserting that Wilson had "made a specific finding that [his] client's property may no longer be used in a manner which does not conform to the Hinckley Township Zoning Resolution, as it had been historically used up to and until January 11, 2019." Richter explained that Rumes had been "provided with the enclosed/attached written ruling in the form of an e-mail on March 15, 2022."

B. *The property owners appeal the March 15, 2022 email "ruling" to the BZA*

{¶ 8} The property owners appealed Wilson's March 15, 2022 email "ruling" to the BZA on April 14. The BZA held a hearing on the appeal but declined to address the merits of whether the discontinued use of the tavern was voluntary, instead focusing solely on whether Wilson's March 15 email was a "decision" under R.C. 519.15 that required any appeal to be filed within 20 days.

{¶ 9} At the hearing, Wilson testified that he had concluded that the property had lost its status as a nonconforming-use property under the zoning resolution because the tavern's liquor license was inactive and the tavern had not operated for over two years. He also testified that he had reached his "ruling" after doing "some simple math." Wilson testified that he had sent the March 15 email with this ruling to Rumes only and had called him the same day to inform him of

the same. At the hearing's conclusion, the BZA determined it lacked jurisdiction to hear the appeal and dismissed it as untimely because it had not been filed within 20 days of Wilson's email.

### C. The property owners appeal to the Court of Common Pleas

{¶ 10} The property owners appealed the BZA's dismissal to the Medina County Court of Common Pleas. There, they argued that Wilson's March 15 email did not constitute a "decision" under R.C. 519.15, because it did not state that they were operating in violation of the zoning resolution, did not order them to cease operations at the property, and failed to specifically state that they could not use the property as a tavern. The property owners also maintained that a "decision" could not be conveyed by email and should have been conveyed by first-class mail. And they argued that Wilson's email is constitutionally deficient because it does not mention a property owners' right to appeal Wilson's finding that the property no longer qualifies as a nonconforming use. The property owners argued in the alternative that even if the email did constitute a "decision" under R.C. 519.15, the email did not comply with the specific notification requirements set forth in the zoning resolution and deprived the property owners of the use of their property without due process since 729 West 130th Street L.L.C. was not notified of the decision through its statutory agent.

{¶ 11} The BZA argued that the email was a "decision" under R.C. 519.15. The BZA maintained that Wilson made his decision based on the property owners' own inquiry, noting that neither R.C. 519.15 nor the zoning resolution delineates how a zoning inspector's decision is to be conveyed to the owners. The BZA asserted that a zoning inspector's decision could be made even verbally as well as by mail or email. The BZA therefore asked the court to affirm its dismissal of the appeal.

{¶ 12} The Medina County Court of Common Pleas affirmed the BZA's dismissal of the property owner's appeal. The court concluded that the email

constituted a "decision" under R.C. 519.15, because neither the statute nor the zoning resolution sets forth any requirements as to the contents or delivery of a "decision." And the court rejected the property owner's due-process claim because Rumes had received notice. Therefore, the court concluded, the appeal was untimely and deprived the BZA of jurisdiction to hear the appeal.

### D. *The property owners appeal to the Ninth District*

{¶ 13} The property owners appealed to the Ninth District, arguing that the trial court should not have affirmed the BZA's dismissal of their appeal as untimely, and they requested that the appellate court vacate the trial court's decision. They argued that Wilson's email was an "ad hoc observation" about the status of the property and did not constitute an adjudication that would be appealable under R.C. 519.15. They also claimed that Wilson's failure to provide the email to all owners of the tavern deprived them of the use of their property without due process.

{¶ 14} The Ninth District agreed with the property owners, holding that the email did not constitute a decision for purposes of R.C. 519.15. 2024-Ohio-3349, ¶ 13 (9th Dist.). The appellate court interpreted "decision" in R.C. 519.15 as an "official, formal action" by an administrative official, *id.* at ¶ 14, and held that Wilson had not issued "any order, requirement, decision, or determination" enforcing R.C. 519.02 through 519.25 or any resolution adopted under those statutes, *id.* at ¶ 16. And even if Wilson had attempted to issue such a decision, the appellate court found no evidence in the record that a zoning inspector had the unilateral authority to determine the status of a property. The appellate court held that because Wilson never issued a "decision" under R.C. 519.15, the 20-day filing deadline was never triggered. *Id.* at ¶ 17. Accordingly, the court concluded that without a proper decision from the BZA, the trial court had nothing to affirm or reverse. *Id.* The appellate court concluded that the trial court lacked jurisdiction to enter a ruling, vacated the trial court's decision, and dismissed the appeal. *Id.* at ¶ 17-18.

*E. The BZA appeals to this court*

{¶ 15} The BZA appealed to this court, raising a single proposition of law:

Whenever a Zoning Inspector makes a determination regarding the allowable use of a landowner's property, and communicates that determination to the property owner, such an action constitutes a decision under R.C. 519.15 and is subject to appeal pursuant to R.C. 519.15.

We accepted jurisdiction over the appeal. 2024-Ohio-5529.

## II. LAW AND ANALYSIS

{¶ 16} This case comes down to whether the zoning inspector issued an appealable decision regarding the zoning classification of the property owners' property. Because the BZA's authority to hear the appeal under R.C. 519.14 and the property owners' right to appeal under R.C. 519.15 involve questions of law, we review these issues of statutory interpretation de novo. *See State v. Straley*, 2014-Ohio-2139, ¶ 9; *Everhart v. Coshocton Cty. Mem. Hosp.*, 2023-Ohio-4670, ¶ 10.

{¶ 17} When presented with issues of statutory interpretation, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12. Thus, we look at the language of the statute to determine its meaning. *Everhart* at ¶ 10; *State v. Ashcraft*, 2022-Ohio-4611, ¶ 7.

{¶ 18} Chapter 13 of the Hinckley Township Zoning Resolution established the BZA and created the BZA's authority, duties, and procedures in accordance

with R.C. Ch. 519. HTZR Sections 13.1 and 13.2. The BZA's powers are outlined in R.C. 519.14, and the rules and procedures concerning appeals to the BZA are outlined in R.C. 519.15. Under R.C. 519.14(A), the BZA has the authority to decide appeals "where it is alleged there is error in any order, requirement, *decision*, or determination made by an administrative official *in the enforcement* of sections 519.02 to 519.25 of the Revised Code, or of any resolution adopted pursuant thereto." (Emphasis added.) And R.C. 519.15 creates a limited right to appeal to the BZA: "Appeals to the board of zoning appeals may be taken by any person aggrieved or by any officer of the township affected by any *decision* of the administrative officer." (Emphasis added.)

{¶ 19} Because the General Assembly left "decision" undefined in R.C. 519.15, we construe the word in accordance with its common, everyday meaning at the time of enactment. *See Eastman v. State*, 131 Ohio St. 1, 7 (1936); *State v. Dorso*, 4 Ohio St.3d 60, 62 (1983); *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶ 17. And we read undefined terms in context, construing them in accordance with the rules of grammar and common usage to give effect to all words in the statute. *See D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 2002-Ohio-4172, ¶ 19; *Vossman* at ¶ 14 (the whole-text canon requires terms of a statute to be read in the context of the statute as a whole).

{¶ 20} "Decision" generally means "a conclusion or resolution reached after consideration," *The New Oxford Dictionary of English* (1998), or "a determination arrived at after consideration," *Webster's Third New International Dictionary* (3d Ed. 2002). In the legal context, "decision" means a determination arrived at "after consideration of the facts and the law," *Black's Law Dictionary* (7th Ed. 1999). Because "decision" is such a broad term, we look to the context and the subject to which it relates, reviewing its combination with other words and phrases that might vary its ordinary meaning. *Vossman* at ¶ 15.

**{¶ 21}** In R.C. 519.14, "order," "requirement," and "determination" accompany "decision." Because "words listed together should be understood in the same general sense," *Vossman* at ¶ 19, "decision" must refer to a formal conclusion made by the "administrative officer" in some official capacity, *see* R.C. 519.14 and 519.15, and made in the enforcement of the zoning regulations, *see* R.C. 519.14. Thus, a party may appeal a zoning inspector's decision—that is, a formal conclusion reached after consideration of the facts and law in the enforcement of R.C. 519.02 through 519.25 or the zoning resolution—to the BZA if the party has been aggrieved or affected by the decision. *See* R.C. 519.14 and 519.15.

**{¶ 22}** Here, the property owners sought information from Wilson about their property's nonconforming-use status under HTZR Section 8.3(D), as the zoning resolution's preface encourages them to do. Consistent with R.C. 519.19, HTZR Section 8.3(D) provides that if a party voluntarily discontinues the nonconforming use for a continuous period of two years or more, the nonconforming use has been voluntarily abandoned, and any future use of the property must conform to the use set forth for the property in the zoning resolution. *See also* HTZR Section 8.8 (the nonconforming use of a property cannot resume once the property's use comes into compliance with its zoning status). But HTZR Section 8.3(D) does not authorize any particular administrative official or body to determine that the party has voluntarily discontinued the nonconforming use. Rather, Section 8.3(D) reads as though any change to the nonconforming-use status simply occurs by operation of law, despite requiring two factual findings: that the discontinuance of the nonconforming use was uninterrupted for two years and that the discontinuance was voluntary.

**{¶ 23}** Whether it is the zoning inspector or another entity that is to make that status determination is unclear under HTZR Section 8.3(D). HTZR Section 8.10 provides that the zoning inspector makes the "determination of non-conforming status" when a property owner submits evidence that the property's use

9

had been lawfully created. After accepting such evidence, the zoning inspector "shall issue a Certificate of Non-Conforming Use." *Id.* Because the property owners did not engage in any formal process by which the zoning inspector issued a formal decision based on evidence, the zoning inspector was unable to issue a "decision" on whether the use of the property remained in compliance with the property's nonconforming-use status.

{¶ 24} But even assuming arguendo that a zoning inspector may make a decision on the tavern's nonconforming-use status outside the process outlined in HTZR Section 8.10, the zoning inspector's "ruling" is nevertheless not a "decision" as contemplated by R.C. 519.14 necessary to invoke the BZA's appellate jurisdiction.

{¶ 25} Clearly, the zoning inspector reached a conclusion here. Using "simple math," Wilson concluded that the nonconforming use had lapsed, apparently by operation of HTZR Section 8.3(D), based on the tavern's loss of its liquor license and closure more than two years earlier. He reached this conclusion in his capacity as an administrative officer, as evidenced by the inclusion of his signature block and decision to copy other officials on his email. But the zoning inspector's responsibility to enforce the zoning resolution does not make every one of his determinations an enforceable and appealable "decision." *See* R.C. 519.14. The BZA may review appeals alleging error only of a zoning inspector's "order, requirement, decision, or determination" in the enforcement of zoning regulations. Indeed, the BZA encourages the public to contact the BZA, the zoning inspector, or the zoning commission to answer any zoning-related questions. Those inquiries may require those administrative officials to offer insights that are not necessarily enforceable or appealable decisions. *See* HTZR, Preface. Whether the decision is enforceable and thus appealable is based on the zoning inspector's authority to enforce that decision.

{¶ 26} The zoning inspector has the authority to enforce the zoning resolution, but that authority is limited. HTZR Section 12.1(A); *see also* R.C. 519.16. The zoning inspector's duties to enforce the zoning resolution include issuing and refusing zoning certificates and investigating zoning violations. HTZR Section 12.1. The zoning inspector "may take any reasonable action necessary to substantiate the existence of a zoning violation." HTZR Section 12.1(B). After investigating and identifying a zoning violation, the zoning inspector shall notify the party responsible for the zoning violation by written order so that the party may remedy the violation. HTZR Section 12.3(A). And in any case in which a building or land is "proposed to be . . . used in violation of any provisions of this Zoning Resolution," the zoning inspector, among others, is permitted to seek an injunction, mandamus, abatement or any other appropriate action or proceeding, "in addition to other remedies provided by law," to "to prevent, enjoin, abate or remove such unlawful . . . use." HTZR Section 12.3(C).

{¶ 27} In this case, because the tavern had yet to resume operations, there was no zoning violation that Wilson could use to enforce his conclusion that the property had lost its nonconforming-use status. And if Wilson had sought to prevent the tavern from operating on the basis that the property had lost its nonconforming-use status, an email to notify Rumes of that conclusion is not an authorized remedy. *See* HTZR Section 12.3(C). Thus, Wilson's email to Rumes was not an action taken in the enforcement of HTZR Section 8.3(D) or R.C. 519.19 and is not enforceable or appealable to the BZA under R.C. 519.14 and 519.15. Rather, Wilson's email is simply advice that the BZA encourages members of the public to seek "before taking any action that may be affected by zoning." HTZR, Preface.

{¶ 28} We conclude that the BZA did not have authority to hear an appeal from Wilson's email to Rumes because it does not constitute a decision that was made either in the enforcement of the zoning resolution or under the relevant

provisions of R.C. Ch. 519. If the property owners had wanted to challenge Wilson's conclusion that the tavern's nonconforming-use status had lapsed, then they should have sought a certificate of nonconforming use or a variance under HTZR Section 8.10, opened the tavern, and anticipated a violation to appeal to the BZA, or sought an injunction or declaratory judgment in the court of common pleas. Simply asking Wilson about the status of the property is not sufficient under the zoning resolution to receive an official answer that can be appealed to the BZA. If Wilson wanted to prevent the tavern from operating as a nonconforming use allegedly in violation of HZTR Section 8.3(D) and R.C. 519.19, then he would have needed to take appropriate legal action consistent with HTZR Section 12.3(C) to prevent such use. And an email sent to Rumes only is plainly not sufficient notice to trigger the deadlines for terminating a property's zoning status as nonconforming. *See* HZTR Section 12.3(C). Thus, the BZA did not have jurisdiction over the appeal because the email was not a "decision" under R.C. 519.14 and 519.15.

### III. CONCLUSION

{¶ 29} We affirm the Ninth District Court of Appeals' holding that the zoning inspector did not make a "decision" under either Hinckley Township's zoning resolution or R.C. 519.14 and 519.15 that triggered deadlines against the property owners in pursuing their right to continue the property's zoning as a nonconforming use. The BZA was therefore without jurisdiction to entertain the property owners' appeal.

Judgment affirmed.

_____

S. Forrest Thompson, Medina County Prosecuting Attorney, and Stefanie H. Zaranec and Brian M. Richter, Assistant Prosecuting Attorneys, for appellant.

Brown, Amodio & Chandler, L.P.A., William J. Muniak, and Maryann C. Chandler, for appellees.

January Term, 2026

_____